LAMB et al., v. MISSOURI PACIFIC RAILROAD COMPANY.

In Banc, December 13, 1898.

1. **Contributory Negligence:** WHEN GROUND FOR DEMURRER. If, from all the evidence, the question as to whether or not plaintiff was guilty of negligence directly contributing to her injury in crossing a railroad crossing is one about which reasonable minds might differ, it must be submitted to the jury.

2. **Evidence:** CONTRADICTIONS BY PLAINTIFF. Although plaintiff may have made several contradictory statements in her testimony as to the circumstances surrounding her at the time she was knocked down by the engine's tender with respect to which a number of the other witnesses differ, yet the weight of her evidence is for the consideration of the jury.

3. **Negligence:** CROSSING: RINGING BELL: NOISE. Where a statute requires the bell of a railroad engine to be kept ringing for eighty rods before it crosses a traveled road or street, the railroad company is not absolved from this statutory duty because of a mere conjecture or possibility that the injured traveler might not have heard the bell had it been rung. And in an action founded on the negligence of a railroad to ring the bell, an instruction that told the jury that, though defendant failed to ring the bell, yet if plaintiff, because of the great noise, could not have heard it, she could not recover damages for the injury done her by the engine, was properly refused.

4. ——: ——: IN CITIES: WITHIN EIGHTY RODS. Although a strict compliance with the statute requiring the ringing of the bell of a railroad engine within eighty rods of a crossing in a city, may often be impossible, yet an instruction that requires it to be rung from the starting of the engine to the crossing, meets the statutory requirements. And an error in an instruction, making the road's failure to ring the bell for eighty yards from the crossing negligence, is cured by a subsequent instruction requiring the ringing to be eighty rods if the engine ran so far, or if not, from the place of starting to the crossing.

Lamb v. Mo. Pac. R. R. Co.

PER SHERWOOD, J., DISSENTING.

1. **Negligence**: DEMURRER TO EVIDENCE. The evidence in this case examined and *held* that defendant's demurrer to the evidence should have prevailed.

2. ———: RINGING BELL: EIGHTY RODS. *Held*, further, that section 2608, Revised Statutes 1889, does not apply and was not intended to apply to switching engines in cities. The statute was only intended to apply to passenger or freight trains regularly made up, when approaching country crossings, or crossings on the boundary line between city and country. Nevertheless, under the principles of the common law, when a switching engine is moving about in a city, it should ring its bell, etc., in order to fully meet the exigencies of the situation.

*Appeal from Cass Circuit Court.*—HON. W. W. WOOD, Judge.

AFFIRMED.

R. T. RAILEY and MARTIN L. CLARDY for appellant.

(1)   Under plaintiff's own admissions, the undisputed testimony, and the physical facts, this court should, as a matter of law, declare that plaintiff was guilty of negligence directly contributing to her own injury, and is not entitled to recover. Payne v. Railroad, 136 Mo. 562; Culbertson v. Railroad, 140 Mo. 35; Huggart v. Railroad, 134 Mo. 679; Watson v. Railroad, 133 Mo. 251; Lane v. Railroad, 132 Mo. 4; Kelsay v. Railroad, 129 Mo. 362; Loring v. Railroad, 128 Mo. 358; Hayden v. Railroad, 124 Mo. 566; Boyd v. Railroad, 105 Mo. 381; Weber v. Railroad, 100 Mo. 199; Lenix v. Railroad, 76 Mo. 90; Powell v. Railroad, 76 Mo. 83; Harlan v. Railroad, 64 Mo. 483; 4 Elliott on Railroads, sec. 1703; Gardner v. Railroad, 56 N. W. Rep. 603; Moore v. Railroad, 56 N. W. Rep. 430; Railroad v. Ross, 19 S. W. Rep. 837; Railroad v. Brown, 21 S. W. Rep. 425; Houghton v. Railroad, 58 N. W. Rep. 314; Connolly v. Railroad, 32 N. E. Rep. 937; Winslow v. Railroad, 42 N. E. Rep. 1133; Oleson v. Railroad, 42 N. E. Rep. 739; Nel-

son v. Railroad, 60 N. W. Rep. 703; Railroad v. Stick, 143 Ind. 449; 3 Elliott on Railroads, secs. 1165, and 1166. (2) Even in criminal cases, cases involving liberty or life, if a party testifies directly in the face of, and in opposition to, obvious physical facts, neither courts nor juries are bound to stultify themselves by giving credence to such testimony. Payne v. Railroad, *supra;* State v. Anderson, 89 Mo. 332; State v. Bryant, 102 Mo. 24; State v. Turlington, 102 Mo. 642; State v. Nelson, 118 Mo. 124; State v. Brown, 119 Mo. 527. To the like effect, see 4 Elliott on Railroads, section 1703, and cases cited. Myers v. Railroad, 24 Atl. 747, was approvingly cited and quoted from by MACFARLANE, J., in Kelsay v. Railroad, 129 Mo. 362, where the controlling circumstances were virtually the same, in legal effect, as in the case before us. Of the same substantial import is Hayden v. Railroad, 124 Mo. 566. See, also, Lane v. Railroad, 132 Mo. 4. (3) Plaintiff, by the exercise of ordinary care, could have discovered the engine and tender approaching her from the east, in time to have avoided the injury, before the passenger train came in. She was, therefore, guilty of negligence, and is not entitled to recover in this action. Kelsay v. Railroad, 129 Mo. 362; Hayden v. Railroad, 124 Mo. 573; Huggart v. Railroad, 134 Mo. 679. (4) If the smoke obstructed plaintiff's view of the engine and tender which struck her, it was her plain duty to have waited, before stepping upon the track, until this temporary obstruction passed away. Oleson v. Railroad, 41 N. E. Rep. 737; Heaney v. Railroad, 112 N. Y. 127; M'Crory v. Railroad, 31 Fed. Rep. 531; Lortz v. Railroad, 31 N. Y. S. 1033; Railroad v. Ewan, 55 N. J. L. 574; Beynon v. Railroad, 168 Pa. St. 642; Mills v. Railroad, 39 N. Y. S. 280; Tierney v. Railroad, 51 N. W. Rep. 176; Railroad v. Fisher, 55 Am. and Eng. R. R. Cas. 228; Stewart v. Railroad, 29 N. E. Rep. 917; Connolly v. Railroad, 32 N. E. Rep. 937; Foran v. Railroad, 19 N. Y. S.

417; Kraus v. Railroad, 139 Pa. St. 272; Häuser v. Railroad, 147 Pa. St. 440; Whalen v. Railroad, 15 N. Y. S. 941; Marty v. Railroad, 35 N. W. Rep. 670. (5) Having boldly charged, in her original petition, that the smoke prevented her from seeing the engine and tender, and having testified to same in her deposition, as well as at the trial, the plaintiff should be bound by these allegations, just as conclusively as though they were incorporated in the amended petition, on which the cause was tried. Lilly v. Menke, 143 Mo. 137; Bigelow, Estop. [5 Ed.], 673, 717; McClanahan v. West, 100 Mo. 309; Brown v. Brown, 90 Mo. 184; Smiley v. Cockrell, 92 Mo. 105; Knoop v. Kelsay, 102 Mo. 291; Tower v. Moore, 52 Mo. 118; Chouteau v. Gibson, 76 Mo. 38; McGuire v. Nugent, 103 Mo. 161. (6) Not only should our instruction numbered 10 have been given, but plaintiff's instructions numbered 1 and 2 should have been refused. Plaintiff's instructions numbered 1 and 2 did not properly declare the law, for the reason, that they would only be applicable to crossings in the country and not between streets in the city and in defendant's switch yard. Davis v. Railroad, 13 Mo. App. 460; Herriman v. Railroad, 27 Mo. App. 445; Brooks v. Railroad, 35 Mo. App. 581; Trans. Co. v. Sims, 36 Mo. App. 236; McGuire v. Railroad, 43 Mo. App. 358; Houghland v. Dent, 52 Mo. App. 241; Keyes v. Bank, 52 Mo. App. 329; Bank v. Hatch, 98 Mo. 378; Harrison v. White, 56 Mo. App. 177; Hall v. Railroad, 74 Mo. 302; Johnson v. Railroad, 77 Mo. 553; Field v. Railroad, 80 Mo. 206; Carroll v. Railroad, 88 Mo. 248; Dickson v. Railroad, 104 Mo. 499; Hite v. Railroad, 31 S. W. Rep. 263; Hite v. Railroad, 32 S. W. Rep. 33; Kelsay v. Railroad, 129 Mo. 362.

W. L. JARROTT and A. L. WHITSITT for respondents.

(1) The citizen who, on a public highway or street crossing, approaches a railroad track and can neither see nor

hear any indications of a moving train, is not chargeable
with negligence in assuming that there is no car sufficiently
near to make the crossing dangerous.    He has a right to
presume that in handling its cars the company will act with
proper care, and the usual signals of approach will be sea-
sonably given.    Tabor v. Railroad, 46 Mo. 353.    Neither
seeing nor hearing the sound of a bell, for none was rung,
plaintiff had the right to presume that she could pursue her
course without danger.    Donohue v. Railroad, 91 Mo. 363;
Petty v. Railroad, 88 Mo. 319; Johnson v. Railroad, 77 Mo.
546; 4 Am. and Eng. Ency. of Law, 924.    (2)    Before
this court can reverse the finding that plaintiff was not guilty
of negligence it must be satisfied that no other conclusion
than that of plaintiff's negligence in the premises is fairly
deducible from the evidence, giving her the benefit of every
reasonable inference that may be drawn from it.    Huhn v.
Railroad, 92 Mo. 440; Mauerman v. Siemerts, 71 Mo. 101;
Kenney v. Railroad, 105 Mo. 285; Hanlon v. Railroad, 104
Mo. 381; Dickson v. Railroad, 104 Mo. 391; Kelly v. Rail-
road, 101 Mo. 67; Hilz v. Railroad, 101 Mo. 36.    (3)
Plaintiff was bound to use such care as would ordinarily be
exercised by a reasonably intelligent person amid such sur-
roundings.    Whether she did so or not was a question of
fact for the jury to determine.    The jury decided that she
used such care.    Johnson v. Railroad, 77 Mo. 546; Kel-
logg v. Railroad, 79 N. Y. 72; Greany v. Railroad 101 N.
Y. 419; Davis v. Railroad, 47 N. Y. 400; Randall v. Rail-
road, 132 Mass. 269; Tyler v. Railroad, 137 Mass. 238.
(4)    It was the duty of defendant to allege and prove con-
tributory negligence as a defense before it could ask for any
instructions directing a verdict for defendant.    Parsons v.
Railroad, 94 Mo. 294; Huckshold v. Railroad, 90 Mo. 548;
Donovan v. Railroad, 89 Mo. 147; Harrison v. Railroad, 74
Mo. 364; Buesching v. Gaslight Co., 73 Mo. 219. (5) Where
the crossing is that of a public street in a city or village the

duty of the railroad company is increased, and the precautions necessary to constitute ordinary care are greater than would be required in the country. Pierce on Railroads, 354, 355; Biersiegel v. Railroad, 34 N. Y. 622; 4 Am. and Eng. Ency. of Law, 935; Smedis v. Railroad, 88 N. Y. 13.

BURGESS, J.—This is an action by the plaintiff Mrs. Lamb (her husband Harvey Lamb joining in the suit with her), for $10,000 damages for personal injuries alleged to have been sustained by her being run against, knocked down and bruised about the face, head and limbs, and her left heel and the under portion of her left foot crushed by a tender, which was attached to one of defendant's engines.

The case was tried to a jury who rendered a verdict in favor of plaintiffs assessing the damages at $3,000, upon which judgment was rendered. Defendant appeals.

The amended petition upon which the case was tried alleges that the injury occurred in the city of Pleasant Hill on the sixteenth day of June, 1893, under the following circircumstances.

"That on said day plaintiff, Jessie Lamb, was walking on the public sidewalk on the west side of the public highway and street called Wyoming street, leading from the southern portion of said city in a northwesterly direction, being one of the principal streets in said city, and which crosses said railroad in a northwesterly direction from and about one hundred yards of the defendant's depot in said city, and in the business portion thereof. While said plaintiff was in the act of crossing said defendant's railroad track at Wyoming street aforesaid, about eight o'clock and thirty minutes, on the evening of said day, it being dark and cloudy at the time, the defendant by its agents, servants and employees, while operating a locomotive engine and tender on said road at said crossing, carelessly, negligently and recklessly ran said engine and tender backwards over and against plaintiff,

Jessie Lamb, and she was then and thereby struck by said tender and while on said crossing and track, and thrown down against the tires, the ties, the stones and the ground with great force and violence, the said tender and engine passing on and over plaintiff's left foot, whereby and by reason whereof her heel and under portion of her left foot was mashed and mangled; that by reason of the striking and knocking her down as aforesaid, she was wounded and bruised about the head, face, chest, body and limbs, whereby and by reason whereof she was seriously and permanently injured. That the train causing the injury consisted of a locomotive engine and tender; that said train approached said crossing at great speed, to wit, at the rate of twenty miles per hour, running with said tender in front of said engine, there being coal and other substances on said tender; the said train was run in such a way that the headlight of the locomotive engine was hid from plaintiff's view by the said tender in front and the said coal and other substances on said tender. That defendant's servants in charge of said engine and tender carelessly and negligently omitted to give any signal or warning by bell or whistle or otherwise before reaching said crossing as required by statute in such case made and provided. That by reason of the darkness of the night and of the light of the locomotive engine being obstructed by said tender and by the coal and other material as aforesaid, she was unable to see the approach of the engine and tender, and on account of the failure of the defendant's servants and agents in charge of said engine and tender failing and neglecting to ring the bell or blow the whistle or give any warning or signal whatever, she was unable to hear the approach of said engine and tender until so near her that she was unable and could not make her escape and avoid the accident aforesaid."

The defenses were a general denial and contributory negligence.

Pleasant Hill is a city of something over two thousand inhabitants. The injury here sued for occurred in that city in the evening of June 16, 1893, where Wyoming street crosses defendant's track. This track runs from the southeast in a northwesterly direction, and divides the business from the residence portion of the city. Mrs. Lamb lived on the north side of the track. She had lived in the city about twenty-six years, and was familiar with the streets, and their crossings with the railroad tracks. On the evening of the accident she had occasion to call at Rayborn's grocery store on the south side of the track, and left there for home about 8:15 p. m. of that evening. It is about one hundred and seventy-five feet from this store to the first railroad track in the direction plaintiff had to go to get home. There are some five or six railroad tracks across the street, at this point, and a large number of trains were passing each way every day. When she got within four or five feet of the first track she stopped. She then heard the whistle of the passenger train from Kansas City which was about due, and waited for it to cross Wyoming street, to the east before crossing the track. This train was on the second track from the south, where Mrs. Lamb was standing waiting for it to cross the street. When it whistled it was about one fourth of a mile west of the crossing. When it had crossed the street, and the rear end of the hindmost car had about reached the east side of the street, Mrs. Lamb attempted to cross the railroad track, when an engine and tender passed over Wyoming street, running backwards west on the south track at a rate of speed variously estimated by the witnesses at from six to twenty miles per hour, ran over her, bruising her head, face and limb, crushing her left heel and the under part of her left foot, and rendering her a cripple for life.

As to whether the bell on the engine to which the tender was attached was being rung at the time of the acci-

dent the evidence was conflicting, but no other signals were given.    There were no lights upon the tender, and plaintiff could not see the lights on the engine.    Nor was there any one in charge of the engine and tender at the time except the engineer.

Mrs. Lamb testified in her examination in chief that she heard the passenger train whistle and waited for it to pull in, then looked to the west, then to the east, then back to the west, and attempted to cross the track, when the engine and tender struck her; that she heard a whistle and just about that time, almost instantly, it struck her. That no bell was being sounded on the engine when the tender struck her.

On cross-examination she stated that when she first stopped at the crossing of the railroad track she was looking toward the depot, and that there was nothing to obstruct her view of the depot, express office and water tank.    That there was a dim light burning in the depot and also in the express office.

That she looked west before the passenger train came down and saw some box cars standing there about fifty yards away without any engine to them.    That she could see those cars, but that it was lighter in the west than in the east. That she looked east after the passenger train had gone by her, and again west, before attempting to cross the track. That she could have seen the engine and tender fifty yards to the east when she looked in that direction but for the smoke and dust between her and the engine and tender, and that there was no other obstruction so far as she knew that would have prevented her from so doing, and the smoke came from the passenger train.

She also testified that she had time enough to have crossed the track after she got to the crossing before the passenger train arrived, but waited until it got by, for fear that she might be injured if she attempted to cross before. That when she last saw the passenger train, it was still mov-

ing down, and that she did not know whether she could see the engine or not; that she saw the passenger lights.

Mrs. Lamb testified upon a former trial of the cause as follows:

"Q.   This smoke you spoke of, came down to the track when the passenger engine first went by you?"   A.   "Yes, sir; when it first went by me, I suppose so; I suppose it went down just as the passenger train went by me."

Q.   "Did you see where the smoke came from?"   A. "Yes, sir; it came from the passenger train."

Q.   "Was any wind blowing at the time?"   A.   "I do not remember."

Q.   "Which direction did the smoke go from the engine, south, north, west or east?"   A.   "It settled in the direction in which I was."

Q.   "Right close to you, did it?"   A.   "Yes, sir."

Q.   "Did it remain there clear up to the time you were hurt, the smoke?"   A.   "I do not remember whether it remained there all the time or not."

Q.   "You did not pay any more attention to it after you first looked and saw it there, is that right?"   A.   "Yes, sir."

Her deposition was also taken on a former occasion in which she stated that she had gone "one step, one foot on the track before being struck."

There was evidence tending to show that at the time of the accident it was not quite dark, but dusky, light enough to see a person across the street.

At the close of the evidence defendant asked an instruction in the nature of a demurrer to the evidence, which was refused, and defendant excepted.

At the instance of plaintiff the court instructed the jury as follows:

1.   The court instructs the jury that under the law in this State, it was the duty of the defendant's servants and

agents, in running, conducting and managing defendant's locomotive engine and tender when approaching any traveled public road or street, to ring its bell on such locomotive engine, at a distance of at least eighty rods from the place where its railroad crossed any public traveled street or road, and to keep the bell ringing until it crossed said street or road, and a failure on the part of the servants and employees of any railroad company running and managing its locomotive engine and tender, to ring such bell, as herein above described at such times and places as herein above specified, is negligence.

2.   The jury are also instructed that if they believe from the evidence that the plaintiff, Jessie Lamb, was, on or about June 16, A. D. 1893, crippled and injured in consequence of being struck by defendant's locomotive engine and tender in charge of and being run by defendant's agents or employees, without any fault or negligence on her part contributing to said injury, at a point on defendant's said railroad where the same then crossed and intersected a traveled public road and street then open to public use, at the place known as the Wyoming street crossing and the defendant's servants and agents in charge of and running said locomotive engine and tender failed to ring the bell in the manner set forth in the instruction numbered 1, and that the injuring of said Jessie Lamb resulted from such failure of defendant's servants to ring the bell in the manner so specified in instruction numbered 1, then the jury shall find the issues for the plaintiffs.

3.   The jury are instructed that if they find from the evidence that the distance which the engine and tender went in going northwest and approaching the public traveled street where plaintiff was injured, to wit, Wyoming street, being the street where plaintiff alleges she was run upon and injured, was less than eighty rods from said street and crossing, it was the duty of the servants and agents of

defendant in charge of said engine and tender attached thereto, to ring the bell, at any time the engine was within eighty rods of the crossing or street, and to continue to ring the bell until the said engine and tender had passed over the said street or crossing.

4. By the term "negligence," as used in these instructions, is meant the want of ordinary care, and by the terms "ordinary care" is meant such care as persons of ordinary prudence and caution would exercise in the same situation, and under the same circumstances.

5. If, therefore, you believe from the evidence that the collision alleged in plaintiff's petition occurred while the plaintiff was herself exercising that degree of care and prudence that an ordinarily careful and prudent person under like circumstances would have exercised, and that the collision was caused by the negligence of defendant, as the term negligence is explained in another instruction, number 4, then your verdict should be for the plaintiff.

6. The court further instructs the jury that if they find for the plaintiffs they will assess Jessie Lamb's damages at such sum as they may believe from the evidence will compensate her, the said Jessie Lamb, for her injuries, including all bodily pain and mental anguish they may believe from the evidence she has suffered, and will necessarily and inevitably suffer, and any permanent injury or incapacity they may believe from the evidence she has sustained, and all damages, present and future, which from the evidence they believe to be the necessary result of the injury complained of, not exceeding the sum of $10,000.

7. The court instructs the jury that they are the sole judges of the credibility of the witnesses and the weight to be given to their testimony, and if they believe from the evidence that any witness has willfully sworn falsely to any material fact in issue in this case, they are at liberty to dis-

regard the whole or any part of the testimony of such witness.

To the giving of all these instructions except the seventh and last defendant objected and excepted at the time.

Defendant asked the court to instruct the jury as follows:

1.   The court instructs the jury that the burden of proof in this cause devolves upon the plaintiffs.

2.   It is the imperative duty of the jury to try this case and to decide it precisely as they would if it were a suit between two individuals.   The fact that the plaintiffs are individuals and the defendant a corporation should make no difference with the jury.   In considering and deciding this case, the jury should look solely to the evidence for the facts and to the instructions of the court for the law of the case, and find your verdict accordingly without any reference to who is plaintiff and who defendant.

You are further instructed that each and all of the instructions must be taken and considered by the jury together as the instructions of the court, and as declaring the law by which you are to be governed in arriving at your verdict.

3.   While the plaintiff, Jessie Lamb, is a competent witness to testify in her own behalf, yet the jury in determining what weight, if any, they will give her testimony, have a right to consider her interest in the result of this litigation, and what she has testified to against her interest, if anything, is to be taken as true, and what she has testified to in her own favor is to be given only such weight as the jury may believe from all the evidence in the case it is entitled to.

4.   The jury are instructed that in determining the negligence of defendant and the contributory negligence of plaintiff, Jessie Lamb, they should take into consideration all the facts and circumstances detailed in evidence; the

interest, if any, of the witnesses in the result of the litigation; the means and opportunities which they had for witnessing the transactions testified to by them, as well as the attention which such witnesses were paying to the transaction as they occurred.

5. If the jury believe from the evidence that plaintiff, Jessie Lamb, in attempting to cross defendant's track, was guilty of any negligence which directly contributed in any degree to the injury complained of, then she is not entitled to recover herein and your verdict must be for defendant, notwithstanding you may believe from the evidence, that defendant, through its servants in charge of said engine were negligent in managing and operating it at the time of the accident.

6. If the jury believe that both plaintiff, Jessie Lamb, and defendant were guilty of negligence which contributed to said plaintiff's injuries, then plaintiffs are not entitled to recover in this action, and your verdict should be for defendant.

7. The court instructs the jury that defendant was guilty of no negligence in running its engine and tender at the rate of speed shown by the testimony. Nor was defendant guilty of any negligence in running engine backward, with the tender in front, as shown by the testimony.

8. It was the duty of plaintiff, Jessie Lamb, to look in both ways and listen for the approach of trains on defendant's track. And if, at any time before she came upon defendant's track she could, either by looking or listening, have known of the approach of defendant's engine, in time to have avoided the accident complained of, then she is not entitled to recover in this case, and your verdict should be for defendant.

9. Even if the jury should believe and find from the evidence that defendant failed to ring its bell before approaching the place where plaintiff, Jessie Lamb, was

injured, yet, if the jury find from the evidence that if such bell had been rung continuously for more than eighty rods before approaching the place where plaintiff was injured she could not have heard the same by reason of the noise, then plaintiff's are not entitled to recover herein, and your verdict should be for defendant.

10.   If the jury believe from the evidence that the bell on the engine which struck the plaintiff, Jessie Lamb, was rung continuously from the depot up to and across the crossing where she was injured, then your verdict must be for defendant.

11.   If the jury find from the evidence that the engine and tender which struck plaintiff, Jessie Lamb, was approaching the crossing where she stood before the passenger train came in, and that by the exercise of ordinary care on her part by looking, she could have discovered the approach of same from the east, then it was said plaintiff's duty, when the passenger train came in, if her view was obstructed towards the east, by smoke or otherwise, to have waited before attempting to cross said track until said smoke or other obstruction had been removed, and a failure upon her part to so do, would constitute negligence which precludes her right of recovery in this action.

The court gave all the instructions asked by defendant except those numbered 9, 10 and 11, which were refused. Defendant excepted to the action of the court in refusing said instructions.

The first point insisted upon by defendant for a reversal of the judgment, is that under plaintiff's own admissions, the undisputed testimony, and the physical facts, this court should as a matter of law, declare that plaintiff was guilty of negligence directly contributing to her own injury, and is not entitled to recover.

Upon this question it may be said that in no case where there is any substantial evidence adduced by a plaintiff in

support of his case, should a demurrer be sustained to the evidence, and it is only in the absence of such evidence that such ruling can be maintained. Negligence is always a question for the jury when the evidence upon material points is conflicting, and even when the facts are undisputed if they are of such a character that different minds might draw different conclusions from them, the case should be submitted to the jury. Nor can negligence be conclusively established, as a matter of law, upon a state of facts upon which fair minded men of ordinary intelligence might well differ as to the inference to be drawn from them; and when the question of negligence arises upon even a conceded state of facts from which reasonable men might arrive at different conclusions, or if the inference to be drawn from the evidence is not certain or uncontrovertable the question of negligence can not be passed upon by the court. [Gratiot v. Railroad, 116 Mo. 450; Tabler v. Railroad, 93 Mo. 79; Norton v. Ittner, 56 Mo. 351; Huhn v. Railroad, 92 Mo. 440; Mauerman v. Siemerts, 71 Mo. 101; Nagel v. Railroad, 75 Mo. 653; Keim v. Transit Co., 90 Mo. 314.]

In considering this question every reasonable intendment in favor of plaintiff is to be drawn from the evidence adduced, and to warrant us in reversing the finding (by the trial court) that *she* was not guilty of contributory negligence, "we must be satisfied that no other conclusion than that of plaintiff's negligence in the premises is fairly deducible from the evidence," giving her the benefit of every reasonable inference that may be drawn from it. [Kenney v. Railroad, 105 Mo. loc. cit. 285. See, also, Huhn v. Railroad, *supra;* and Mauerman v. Siemerts, *supra.*]

While it was the duty of Mrs. Lamb when she approached the railroad track to look in both directions, and listen for approaching trains before attempting to cross, she testified that she not only looked and listened for approaching trains but that she also stopped, and could not see

or hear any.   That it was growing dark, and immediately after the passenger train had crossed the street, she attempted to cross the track, when the tender was backed across the street by the engine to which it was attached at a rapid rate rate of speed without giving any signal or warning, ran over her and inflicted the injuries for which she sues.   She also stated that she could not see or hear the engine and tender in time to prevent it from running against her, and that the bell on the engine was not ringing.

It is true that she also testified that the smoke from the passenger train settled around her so as to interfere with her seeing the engine and tender, and that she made several contradictory statements as to the darkness of the evening and the circumstances surrounding her at the time of the accident with respect to which a number of other witnesses who testified in the case differed.   But the weight of her evidence was for the consideration of the jury.   Nor will her statement that she looked both ways east and west before attempting to cross the track, and did not see the tender and engine which struck her, justify the conclusion that she did not look down the first track upon which they were, for no other fair construction can be placed upon that statement than that she did look down that track to the east and also to the west.

Upon all the material facts in issue except perhaps with respect to the smoke from the passenger train, the evidence was conflicting and whether the case be considered upon Mrs. Lamb's evidence alone, or from all the evidence, the question as to whether or not she was guilty of contributory negligence was one upon which reasonable minds might very well differ, and was properly submitted to the jury.

The defendant insists that error was committed in refusing the ninth instruction asked by it.   It is asserted that the only charge of negligence, in respect to defendant, is that in regard to its failure to ring the bell, and from this

position it is argued that if defendant had performed its duty, and by reason of her conduct and surroundings, plaintiff would not have heard it, then defendant's negligence could not have been the proximate cause of the injury, for the obvious reason that she would have been injured as she was, under such circumstances, had the bell been rung. This position we think untenable for the following reasons:

Section 2608, Revised Statutes 1889, provides that "a bell shall be placed on each locomotive engine, and be rung at a distance of at least eighty rods from the place where the railroad shall cross any traveled public road or street, and be kept ringing until it shall have crossed such road or street." And defendant was not absolved from this statutory duty because of a mere conjecture or possibility that plaintiff may not have heard the bell if it had been rung. Mrs. Lamb and several other witnesses testified that no bell was being rung on the engine at the time of the accident, and the mere conjecture that she could not have heard the bell had it been ringing on account of the noise and confusion, did not justify the giving of this instruction.

A further contention is that the first and second instructions given on the part of plaintiff did not properly declare the law, for the reason that the law as declared by them is only applicable to railroad crossings in the country, and not between streets in a city, nor in railroad switch yards, and therefore, the tenth instruction asked by defendant and refused should have been given.

It is of general knowledge that streets in cities are not as a general rule eighty rods apart, and to require a strict compliance with the terms of the statute by railroad companies in cities, and in their switch yards, as declared by plaintiffs' instructions now under consideration, would be impracticable, indeed as a general thing quite impossible, and taken alone they imposed greater burdens upon the defendant than the law reasonably justified; but when they are

considered in connection with the third instruction given
upon the part of plaintiffs by which the jury were told that
if the distance which the engine and tender went in going
northwest to the street, where the injury occurred was less
than eighty rods from said street, it was the duty of the
servants and agents of defendant in charge of said engine
and tender to ring the bell  at any. time  the  engine  was
within eighty rods of the crossing of the street, and to con-
tinue to ring it until said engine and tender passed over the
said street crossing, they are relieved .of their objectionable
features, and presented the law as we understand it.    Rail-
road v. Rogers, 39 S. W. Rep. 1112, was an action for dam-
ages alleged to have been occasioned by the negligence of
defendant's servants in charge of the train on failing to give
signals required by statute on approaching a crossing, and
it was held that it was not error to refuse to instruct that
if defendant gave the signals at less than the statutory dis-
tance from the crossing, and deceased could in the exercise
of reasonable care  and caution, have heard the warning,
defendant was not liable, where the court instructed, at de-
fendant's request, that if defendant's engine was started
from a point within the statutory distance which was eighty
rods, and gave proper signals on starting, defendant was not
liable, and that plaintiff must show negligence by a prepon-
derance of the evidence.    While the instruction in that case
presenting the ·question under discussion was given at the
request of defendant, and in the case at bar at the instance
of plaintiff, the principle is the same, and it makes no dif-
ference by which party presented.

The verdict was not, we think, without substantial
evidence to support it, and having met with the approval of
the trial court we are not disposed to interfere.   We ac-
cordingly affirm the judgment.

GANTT, C. J., BRACE and WILLIAMS, JJ., concur; SHER-
WOOD, ROBINSON and MARSHALL, JJ., dissent.

SHERWOOD, J. (dissenting) —Action for $10,000 damages for injuries resulting to Mrs. Lamb, the beneficial plaintiff herein, by being struck by a tender which was attached to an engine belonging to defendant company and which knocked plaintiff down, bruising her about the head, face and limbs, and the engine and tender ran over and crushed the heel and under portion of her left foot.

The answer of defendant was a general denial, coupled with a plea of contributory negligence; the reply was a general denial. The petition counted on the night of the occurrence of the injury being "dark and cloudy." In her original petition "smoke" was alleged as an additional ingredient of injury, but this element was eliminated from the amended petition, because of an instruction given at the instance of defendant to the effect that if plaintiff's view was obstructed by smoke or otherwise, it was her duty to have waited until such smoke or other obstruction had been removed before attempting to cross the track, and a failure to do so would preclude a right of recovery.

The accident occurred on the sixteenth day of June, 1893, about 8:20 o'clock in the evening of that day, in the city of Pleasant Hill (a city of over two thousand inhabitants), at a public crossing of Wyoming street where that street crosses the railroad track of defendant company, which track runs through the city from the southeast in a northwesterly direction, and divides the business from the residence portion of the city. Wyoming street runs north and south through the city and across the tracks, two in number at that crossing. A plat and photographs which will accompany this opinion will give an accurate idea of the scene of the accident and its surroundings. It will be noted in this connection, that the two tracks involved in the evidence preserved in the record, are parallel, and for a long distance, entirely straight for a distance of a quarter of a mile to the east, and there are no obstructions to the vision along the lines

Lamb v. Mo. Pac. R. R. Co.

PLAT OF
DEPOT AND GROUNDS
AT
PLEASANT HILL, MO.

of the first and second tracks. Along those tracks a great many trains were accustomed daily to pass backwards and forwards. Mrs. Lamb was. twenty-six years of age; was born and reared in Pleasant Hill; was perfectly familiar with the crossing and with the running of the trains, and living, as she did, north of the railroad tracks, was accustomed to cross them at this same crossing two or three times a day, and a great many trains were passing as plaintiff usually went over the crossing, and this had been the case with her for years. This crossing was west of the depot about two thirds of a block or about three hundred and twenty-two

Lamb v. Mo. Pac. R. R. Co.

Lamb v. Mo. Pac. R. R. Co.

feet.    There is a sidewalk on the west side of Wyoming
street, which crosses these tracks.    At this point the first
track is a switch track, on the south, and the passenger track
is next to it on the north.    It is thirteen feet and eight
inches from the south rail of the second or passenger track
to the south rail of the first or switch track, and each track
is four feet eight inches wide.    On the evening in question,
she had been over on the south side of the railroad to Ray-
burn's grocery store, about one hundred and seventy-five
feet to the south of the first railroad track, and left there
for the purpose of returning home; accordingly, she walked
north on the sidewalk on the west side of Wyoming street,
until she approached within four or five feet of the south
rail of the first, south or switch track.    There she stood for
three or four minutes, waiting, as she says for the passenger
train then about due, to come in from the west, or Kansas
City, and go on east across the sidewalk on the west side of
Wyoming street before she would venture to cross.    Pretty
soon the expected passenger train came in view, the engine

VOL. 147 mo—13

whistled at the usual place west of the Wyoming street crossing, eighty rods or one thousand three hundred and twent feet from the place where plaintiff was standing. This passenger train traveled on the second track north of plaintiff, proceeding east to the depot. While this was occurring, and when the passenger train, the cars of which were brilliantly lighted, had almost crossed over the crossing at Wyoming street, the last car having gotten about east of that street, an engine and tender came from the east along the first, south or switch track, on the immediate south of which plaintiff was then expectantly standing. This engine and tender running backwards, was going west and crossed Wyoming street, running at a rate of speed variously estimated at six to twenty miles per hour. It is asserted in plaintiff's behalf that no signals were given by the engine going west, but on this there is the usual conflict. She testifies that before she stepped on the first or nearest track to her, she looked both ways up and down the track and did not see or hear the engine, and then stepped on the first or switch track, when "almost instantly" she heard the engine whistle, and then the tender immediately struck her, knocking her twenty-five or thirty feet westward, etc., and that no bell was sounded on the engine in question. And she also testifies that just before the passenger train came down, she looked to the west and saw some box. cars there some fifty yards distant on the first track, and that her vision' was equally unobstructed towards the east; and that she could have seen the engine and tender fifty yards to the east when she looked in that direction had it not been for the smoke and dust between her and the engine and tender, and that there was no other obstruction that she knew of to have prevented her, when standing four or five feet from the first track, from seeing an engine on that track clear down to the depot, and that the smoke came from the passenger train. Further on she testifies that the smoke and the dusky even-

ing, and the darkness of the night prevented her from seeing the engine and tender, and that when she first went down to the track, and as the passenger train was coming in, she looked down east and saw Duncan's building, the depot, and the lights in the windows, and that if there had been no smoke or dust she could have seen an engine and tender fifty feet to the east as they came toward her. Asked further with reference to the crossing of the passenger train, she says when she last saw it, it was still moving down; that then she looked east; but saw only the passenger train; that immediately after the passenger train passed by her, she looked east and then west and then stepped on the track. Asked whether at that juncture she could see the engine, she answered, *"I do not know whether I noticed whether I could see the engine or not; I saw the passenger lights."* In no place in her testimony does it appear that she *looked down the first track,* near which she was standing. She may have looked east, that is let her eye follow the passenger train and the second track on which it was moving, *without looking at the first track at all.* She also testifies that as she was standing at the place beside the track, at which she stopped, and before the passenger train pulled in, that there was nothing to have prevented her from crossing the tracks in safety; she says, indeed, that even after the passenger train got within one hundred yards of the crossing, she had time to have made the crossing, but she felt safer waiting, although it was less than twenty-five feet from where she was standing, to the north rail of the passenger track, and although night was approaching. In addition to plaintiff's testimony already set forth, her testimony had been preserved as given at the last or second mistrial. Asked at that time if she had seen the engine before it struck her, she said, "I do not remember seeing it until it struck me. I heard the sound of the whistle." Asked how far it was when it whistled, whether six, eight or ten feet, she said it

seems it was closer than that; it may have struck me right at once; I do not know.   Asked again if it might have been off eight or ten feet when it whistled, she said no, if it had she could have gotten off the track.   On that former trial she was also questioned about the smoke about which she had testified, and stated that it settled in the direction where she was, right close to her.   Upon this, being asked if the smoke remained clear up to the time she was hurt, she said she did not remember whether it did or not, and that she did not pay any more attention to it after she first looked and saw it was there.   On a former occasion the deposition of plaintiff had been taken, and she stated that when the passenger train had gone by, she started to cross.   Asked how far she had gotten before being struck, she answered "one step, one foot on the track."

Mundy, a negro, came along as plaintiff was standing where she had stopped; saw her there and then crossed over, and looking back saw her still standing there, looking toward the passenger train as it was coming in.   This witness says that as he crossed over the tracks, he looked east and saw the engine and tender that afterwards struck plaintiff coming back, that is coming west; they were about the lower crossing (Commercial street), a block distant; that this was east of the depot; that there was no obstruction at this time between plaintiff and the engine and tender, or between witness and those objects; "that any body that was looking that way and watching for anything to look at could have seen it."

Hayes, another witness who crossed the tracks with Mundy, says that he and Mundy crossed the tracks together in front of plaintiff, and that in crossing, he looked east towards the depot and saw the engine and tender down back of Duncan's and moving west and that it was in plain view from where witness was, and that there was nothing in the way to obstruct plaintiff's view of the engine and tender;

that they ran up to the crossing just at the same time the passenger train went by; both of them passing the same point where the accident occurred at the same time; that the bell on the passenger train was ringing, but whether the bell was ringing on the approaching engine witness could not say.

Goudy, another witness, says he was a passenger on the Kansas City incoming train, was in the middle or chair car; there were three coaches on the train, all of them lighted; the window was up and he sitting on the south side, saw plaintiff as the train was crossing Wyoming street; she was standing on the sidewalk, and looking toward the passenger train, and witness recognized her when passing; that the engine and tender which he supposed struck plaintiff passed the rear end of the passenger train about the middle of Wyoming street; that both the engine and train were moving at the time, the train going east and the engine going west; that the engine passed witness about the middle of Wyoming street, a street ninety-eight feet between sidewalks, and plaintiff was then on the sidewalk; that in the judgment of witness, who had been depot agent for over sixteen years, and was consequently familiar with the locality, a person standing four or five feet south of the south track, could see as far east as beyond Commercial street and perhaps as far as the tank.

Barnes, another witness, says: On the evening of the accident, he was sitting at the corner of Dunn's drugstore, which is on the west side of Wyoming street, and about one hundred and twenty feet south of the railroad tracks and the next door north of the postoffice, when he observed the passenger train coming in from Kansas City, and saw the engine and tender which struck plaintiff. The ringing of the bell first attracted his attention that way, and he saw plaintiff walking slowly down the sidewalk toward the track, and she seemed to pause before she got to the track, and

though her back was toward witness, she seemed to be looking toward the passenger train, and up into the cars as the train ran up to the crossing; that as the last car moved out of the way going east, and the engine and tender came out from behind Duncan's and was about fifteen or twenty feet of plaintiff when witness first discovered it; that as the last car moved out of the way, plaintiff stepped forward, and as the engine and tender were backing up at a pretty rapid rate, witness raised to his feet because plaintiff seemed not to be looking at them and they did not seem to attract her attention, and just as he rose to his feet they struck her, and that plaintiff and the engine and tender were both in plain view of witness just before the collision occurred.

Another witness, Dunn, was in front of the Pleasant Hill Company's drug store on the evening of the accident, a little northwest of Duncan's store and also on the west side of Wyoming street; he did not witness the accident, but he saw the engine and tender as it went toward the crossing where plaintiff was struck, and they were in plain view from where plaintiff stood at the crossing; that immediately after the accident, witness had no difficulty in distinguishing an object one hundred and fifty yards or so, and that immediately after the occurrence he had no trouble in distinguishing a man from a woman that far as they came up to the crossing from the depot.

Hubbard was standing at the rear of Duncan's store, within ten feet of the south track on the east side of Wyoming street and about to cross the track there, when his attention was directed to the engine and tender by the noise of the wheels and the puffing of the smokestack; casting his eye to the east, he saw them coming and about fifty feet distant, and though he says he saw no lights on them, yet it does not appear that he had the slightest difficulty in seeing them. At that time he states he saw plaintiff on the opposite or west side of Wyoming street ( a street ninety-

eight feet wide between sidewalks), just to the railroad when
he saw her, and though plaintiff was an entire stranger to
him at that time, he had no trouble in recognizing her, and
then he says he heard two or three sharp whistles and the
accident occurred at the same time, though he says he did
not see plaintiff struck.   Belmont who was with Hubbard,
gave similar testimony, and says that although the evening
was dusky, not dark, you could see a person across the street,
not able perhaps to recognize him unless personally ac-
quainted with him.

Thomas was on the west side of Wyoming street one
hundred and thirty feet south of plaintiff, near the post-
office, and saw the engine and tender that struck plaintiff
come out from behind Duncan's, saw it very plainly, saw it
on up to where plaintiff was struck and heard her scream.

McArthur was with Thomas at the postoffice, which he
states is about one hundred and sixty feet from Duncan's
corner, and saw the engine and tender come from behind
that corner up to where plaintiff was standing.

Hughes, also near the postoffice, says he saw the engine
and tender come from behind Duncan's store and that they
would have to come between plaintiff and the lights of the
passenger train when moving west to the crossing.

York, was about fifteen or twenty feet south of plain-
tiff when the accident occurred, and saw engine and tender
when they were about fifteen feet from plaintiff and a per-
son with her, and said if they do not see that train they will
get run over, and about that time it struck her; he also says
he first saw the engine and tender about forty feet off; that
the passenger coaches were brilliantly lighted, and that
standing where plaintiff was, the engine and tender would
be *bound to pass between her and the lights of the passenger
train.*

Bailey, was sitting on the sidewalk almost due south of
the west line of Duncan's store, and about one hundred and

seventy-five feet from the point of the accident and saw the engine and tender as they crossed Wyoming street; that the passenger coaches were brilliantly lighted, and that from that position occupied by plaintiff, there was nothing to obstruct her view, and no reason why she should not have seen the engine and tender by the lights of the passenger train.

The testimony of all the witnesses is to the effect that the engine and tender passed the rear portion of the passenger train about on Wyoming street. Davis, a negro, was, when the accident occurred, at the water tank west of the depot and on the north side of the railroad tracks; that he could then see objects about the width of a block, very plainly; that he first saw the engine and tender about one hundred and fifty feet from where the plaintiff was injured. The last witness, as well as seven others who preceded him, were witnesses for plaintiffs; the others were for defendant.

McGrath for defendant testified that he was the engineer on the engine and tender that struck plaintiff. He saw plaintiff standing near the track when he got within sixty feet of her. She was standing still, with her face to the north, and did not appear to look toward him. He thought she was going to remain standing until the crossing was made. He was on the east side of the plaintiff, there was no obstruction between the plaintiff and him; that she was about six feet from the track and remained there up to the time when he got within ten or twelve feet of her when she started across the track; that immediately he tooted the whistle and reversed the engine; that it was impossible to have stopped the engine after he saw that plaintiff was going on the track; that she was facing the north and looking that way, and that he did not see her looking toward him. He also states that the bell on the engine was rung continuously from the time they left the elevator two hundred or more feet east of the depot, until the west sidewalk of Wyoming street was reached.

Gilbert, was standing one hundred yards west of where plaintiff was injured, and giving signals to the engineer on the engine and tender, and that there were several lights on the engine, and that he could see and distinguish them before plaintiff was struck; heard several blasts of the whistle before the engine stopped. Asked how far he could see the engine and tender before it got to the crossing, he replied he could see it as far as the tank east of the depot.

Mrs. Edmonson standing on the east sidewalk which crosses the track north of Duncan's store, and standing there heard the bell of the engine ringing, and looking around, saw the engine and tender; that she heard the bell before she saw the engine and tender and that the bell on the engine continued to ring after it passed her, and that she saw the tender strike plaintiff who was standing on the opposite sidewalk, and that she saw and recognized plaintiff.

Several other witnesses testified in a similar strain as to the facility with which men and women could be seen and recognized at considerable distances on the evening in question, but it is quite unnecessary to quote from them all.

At the close of the testimony, defendant asked an instruction in the nature of a demurrer to the evidence, which was denied. The jury returned a verdict for plaintiff for $3,000.

The evidence already recited, conclusively shows that this case falls within that category of cases which announce these principles: That in like circumstances to those here presented, the contributory negligence of plaintiff precludes her from recovery, and that the well established physical facts disclosed by this record, are an all-sufficient answer to plaintiff's assertion that she filled the measure of ordinary care by looking in the proper direction before she stepped upon the track. These principles will be found announced and elaborated in the following cases: Hayden v. Railroad, 124 Mo. 566; Kelsay v. Railroad, 129 Mo. 362; Lane v. Rail-

road, 132 Mo. 4; Maxey v. Railroad, 113 Mo. 1; Payne v. Railroad, 136 Mo. 562; Huggart v. Railroad, 134 Mo. 673; Vogg v. Railroad, 138 Mo. 172; 3 Elliott on R. R., secs. 1165 and 1166 and cases cited.

And under the authorities cited, even if defendant company failed to give the customary signals, this would not justify plaintiff in failing to use all proper precautions.

If a traveler could have seen the train by looking, the presumption is that he did not look, or if he did look, did not heed what he saw.    [Elliott on Railroads and Payne's case, *supra*.]

Now as to the ringing of the bell; as before remarked, the testimony is conflicting on this point; several witnesses were positive that the bell was properly rung; some others deny this, while others did not hear it.    Section 2608 is the statute (R. S. 1889) on which such duty, speaking in a general way, is bottomed.    The provisions of that section, so far as necessary to quote them, are as follows:    "A bell shall be placed on each locomotive engine, and be rung at a distance of at least eighty rods from the place where the railroad shall cross any traveled public road or street, and be kept ringing until it shall have crossed such road or street, or a steam whistle shall be attached to such engine and be sounded at least eighty rods from the place where the railroad shall cross any such road or street, except in · cities, and be sounded at intervals until it shall have crossed such road or street, under a penalty of $20 for every neglect of the provisions of this section, to be paid by the corporation owning the railroad."

Under the theory that this section was applicable to cities, this instruction was given at plaintiff's instance: "The court instructs the jury that under the law in this state it was the duty of the defendant's servants and agents, in running, conducting and managing defendant's locomotive engine and tender when approaching any traveled public road or.

street, to ring its bell on such locomotive engine, at a distance of at least eighty rods from the place where its railroad crossed any public traveled street or road, and to keep the bell ringing until it crossed said street or road, and a failure on the part of the servants and employees of any railroad company running and managing its locomotive engine and tender, to ring such bell, as herein above described, at such times and places as herein above specified, is negligence."

A careful, or even a cursory reading of section 2608, should convince any one that the statute is impossible of application to switching engines when operating in cities. If it should be held thus applicable, it would block the progress of railroad trains throughout the State, indeed over the continent of North America, because it would require that a switching engine about to cross a street should ring its bell for eighty rods before doing so. Now it is a fact of such common knowledge that city streets are not a quarter of a mile apart, and that city blocks are not eighty rods long, that we may take judicial notice of it. But even if they were that far apart, still this would not help the matter; because even then if switching engines attempted to do intermediate switching, they could not comply with the statute. This is too plain for serious discussion. In our judgment, the statute applies, and was only intended to apply to passenger or freight trains when regularly made up when approaching a country crossing, or crossing on the boundary line between city and country. Any other conclusion than this leads to manifest absurdity, and when this is so, the letter of a statute may be enlarged or restrained according to the true intent of the framers of the law, for "the letter killeth, but the spirit maketh alive." Under this conservative rule general terms are so limited and restrained as not to lead to injustice, oppression, or absurd consequences, the presumption being indulged that no such anomalous consequence

was intended by the framers of the law. [Ex parte Marmaduke, 91 Mo. loc. cit. 244, and cases cited; Sutherland on Stat. Const., sec. 218.]

But while we say this, at the same time we say that outside of the statute, and under the principles of the common law, a railroad corporation would not perform its full duty of ordinary care, unless those employed on a switching engine, engaged in its customary avocation, should ring its bell, or if necessary, take any other precaution adapted to the exigency of the situation. It is this exigency which, like the mercury in the thermometer, determines to what degree prudence shall rise in order to reach the mark of ordinary care.

And when the engineer approached with the engine and tender to within sixty feet of where plaintiff was standing on the sidewalk, and saw her there, he had the right to presume that she would not be guilty of such reckless folly as to attempt to cross in front of the moving tender. [Purl v. Railroad, 72 Mo. loc. cit. 172, and cases cited.]

In addition to the testimony of plaintiff and others adduced at the trial, there are preserved her admissions made at a former trial and in a deposition. Such admissions, though they could not be admissible in the case of an ordinary witness, except for the purpose of impeachment, yet it is otherwise where, as here, the witness is a party to the suit. In such case, such admissions constitute evidence not only of an impeaching nature, but evidence also of a substantial and probative character.

In Bogie v. Nolan, 96 Mo. 85, such evidence was held admissible, overruling an aberrant decision in Priest v. Way, 87 Mo. 16, and following the dissenting opinion in that case (a circumstance not infrequent in this latitude).

For the reasons aforesaid, the demurrer to the evidence should have prevailed. MARSHALL and ROBINSON, JJ., concur in this opinion.