O'KEEFE, Respondent, v. ST. LOUIS & SAN FRAN-
CISCO RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, November 15, 1904.

1. **NEGLIGNECE: Railroad Crossing: Duty of Gateman.** It is the
duty of a gateman at a railroad crossing to exercise ordinary
care in the operation of the gates to avoid letting them down
upon passers in the street; and such ordinary care requires him
to keep the gates under control at all times and keep his eyes
on the street while lowering them.

2. ———: ———: **Contributory Negligence.** A pedestrian, ap-
proaching a railroad crossing guarded by gates, which at the
time were up, did not look further to see whether they were
being lowered, because no train was in sight and she heard no
bell, which it was the custom of the gateman to sound when he
lowered the gates. *Held*, in an action for injuries received by
the lowering of the gates upon her while the evidence tended
to show some negligence on her part, it was a question for the
jury to say whether she was guilty of negligence which con-
tributed directly to her injury.

3. ———: ———: **Abstraction: Presumption.** An instruction to
the effect that plaintiff was presumed to know what she would
have seen by the exercise of ordinary observation is a mere
abstraction and was properly refused.

4. ———: ———: **Contributory Negligence.** Plaintiff was not
bound to continually watch the gate to see whether it was
about to descend, if it was up when she started across the
street, and there was no warning that it was about to be low-
ered. Nor was she guilty of contributory negligence from the
mere fact of walking under it while it was descending.

5. ———: ———: **Lowering Gate: Duty of Gateman.** The gate-
man was bound to assume that persons might be on the street
and it was his duty to watch for them and keep his gate under
control. He could not presume that pedestrians would not walk
under it while it was being lowered.

Appeal from St. Louis City Circuit Court.—*Hon.
O'Neill Ryan*, Judge.

AFFIRMED.

*L. F. Parker* and *J. G. Egan* for appellant.

(1)   There was no negligence shown on the part of the defendant. Yancey v. Railway, 93 Mo. 433, 6 S. W. 272; Bunyan v. Railroad, 127 Mo. 12, 29 S. W. 842; Schulte v. Railroad, 44 La. Ann. 509; 10 So. R. 811. (2) As plaintiff was approaching this gate, the tower man, Hibbler, was not bound to presume that the plaintiff would walk under the gate, as it was being lowered, but has a right to presume that she would not walk under it, but would stop clear of it while it was being lowered. Tanner v. Railway, 161 Mo. 497, 61 S. W. 826; Guyer v. Railway, 174 Mo. 344, 73 S. W. 584; Skipton v. Railroad, 82 Mo. 134; Van Bach v. Railway, 171 Mo. 338, 71 S. W. 358; Peck v. N. Y., N. H. and H. R. Co., 50 Conn. 379. (3)   It was the paramount duty of the tower man Hibbler to lower the gate promptly, so as to block the crossing for the approaching trian. Culbertson v. St. R. R. Co., 140 Mo. 35, 36 S. W. 834. (4) The plaintiff was negligent in the matter directly causing her injury, and on this account is not entitled to recover. Penn. R. Co. v. Righter, 13 Vroom 180; Beach on Contributory Negligence, sec. 63, pp. 191, 192, sec. 180; Brown v. Railroad, 42 La. Ann. 350, 7 So. 682, 684; Judson v. Railroad, 63 Minn. 248, 65 N. W. 447, 449; Vogg v. Railroad, 36 S. W. 646; Harris v. Ice Co., 153 Pa. St. 278; 25 Atl. 133; Robb v. Connellsville, 137 Pa. St., 42; Evans v. Adams Express Co., 122 Ind. 362, 366, 367, 23 N. E. 1039, 7 L. R. A. 678; Cotton v. Wood, 8 C. B. N. S. 568. (5)   A traveler crossing a railroad track is bound to look out for trains at all times, and it follows as a consequence, is bound to look out at all times for the letting down of gates at a crossing provided with gates. Tucker v. Railroad, 80 N. W. Rep. 984. (6)   A traveler upon a crossing is presumed to see what could be seen by looking carefully. Lane v. Railway Co., 132 Mo. 4, 33 S. W. 645. (7)   The duty upon the plaintiff to exercise care to protect herself

was as imperative as the duty upon the defendant to exercise care to protect her. Meyer v. Railway, 6 Mo. App. 27.

*A. R. Taylor* and *Gerald Griffin* for respondent.

(1) It was the duty of defendant's watchman to watch for and be on the lookout for persons approaching defendant's gate, or who were in the act of crossing the street and passing where the same was operated, and under such circumstances he was bound to use such ordinary care in the operation of said gate, or in refraining from lowering the same, as might be necessary or proper to avert accident or injury to plaintiff. And a failure to use such care was negligence. Winters v. Railway, 99 Mo. 517, 12 S. W. 652; Frick v. Railway, 75 Mo. 609. (2) Tower Grove avenue at the place where the accident and injury occurred to plaintiff, being an open public street, the plaintiff had a lawful right to be upon said street and to travel over, across and along the same, and it was the duty of defendant's watchman to use ordinary care under the circumstances to prevent the arm or beam of the gate from descending upon the plaintiff whilst she was so upon said street. Henry v. Railway, 113 Mo. 536, 21 S. W. 214; Oates v. Railroad, 168 Mo. 544, 68 S. W. 906; Stringer v. Frost, 116 Ind. 447. (3) The plaintiff was not guilty of contributory negligence as charged in defendant's answer. This is and was a question of fact which was properly submitted to the jury, and it was settled by their verdict and finding in favor of the plaintiff. It must therefore, be presumed and held that the plaintiff in crossing Tower Grove avenue at the time and place, and under the circumstances in which she crossed the same, was in the exercise of due care and not guilty of any negligence. Lamb v. Railroad, 147 Mo. 185, 186, 48 S. W. 659, 51 S. W. 81; Gratiot v. Railroad, 116 Mo. 466, 21 S. W. 1094.

STATEMENT.

The general direction of Tower Grove avenue, in the city of St. Louis, is from north to south. It is crossed by three tracks of the St. Louis & San Francisco Railroad Company running east and west. These railroad tracks also cross Manchester avenue a short distance west of the Tower Grove crossing. The two avenues come together a short distance north of the railroad tracks and there diverge. There are four crossing gates controlled and operated by the railroad company, two on Manchester avenue crossing and two on Tower Grove avenue crossing, on either side of the tracks. South of the tracks of the St. Louis & San Francisco Railroad Company is a spur track belonging to the Missouri Pacific Railroad Company, and immediately south of this spur is the south gate on Tower Grove avenue. The four gates are controlled and operated from a gate tower situated near the intersection of Tower Grove and Manchester avenues and north of the tracks about one hundred and ten feet. The gates are double, that is, they consist of two arms worked on a pivot by cogwheels and when lowered cover the street from curb to curb, but do not cover the sidewalks. The arms stand upright and are let down by the man in the tower turning a crank. It takes from three to five seconds to let them down to a horizontal position. In descending they describe about one-fourth of a circle and when down reach within three or four feet of the ground. Double street car tracks are laid in the center of Tower Grove avenue, over which electric cars are run by the St. Louis Transit Company. There is a granitoid sidewalk south of the railroad track, on the east side of Tower Grove avenue. On October 5, 1903, the St. Louis & San Francisco Railroad Company made an excavation along the east side of Tower Grove avenue just outside of the curb for the purpose of connecting with a sewer to the

south. The dirt from the excavation was thrown on the curb and sidewalk and was piled up two or three feet high at the pivot of the south gate. Pedestrians going south on Tower Grove avenue usually cross the railroad tracks on the east side of the avenue, the west side being unprovided with suitable planking. On the day mentioned, October 5, plaintiff was down town and to return to her home on Castleman avenue, south of the railroad tracks, took a car at Eighth and Market streets and got off at Tower Grove Station as the car she was on could go no farther south owing to the breaking up of the street. Plaintiff, to get home, had to take a car on Tower Grove avenue traveling south, and to reach said car was obliged to cross the railroad tracks. She crossed on the east side of the avenue. When plaintiff reached the south gate, she testified the dirt from the excavation obstructed the sidewalk and she turned off and walked diagonally across the street in order to reach the car she intended to take. Just as she was under the gate it was lowered and the east arm struck her on the right shoulder, throwing her to the ground and injuring her badly. She sued both the St. Louis & San Francisco and the Missouri Pacific Railroad Companies to recover for her injuries. At the trial she voluntarily dismissed her suit against the Missouri Pacific Railroad Company. The jury found in her favor against the St. Louis & San Francisco Railroad Company and assessed her damages at $2,500. Defendant appealed.

BLAND, P. J. (after stating the facts).—1. At the close of plaintiff's evidence, the defendant moved for a compulsory nonsuit. The court refused to grant the motion. This ruling is the first error assigned. Plaintiff's evidence shows that she had to go to the middle of Tower Grove avenue to take the car, and tends to show that if she had passed south of the gate, she would have been compelled to have gone

on to the next street south and then returned in the street in order to reach the car, on account of the excavation and the dirt that had been thrown out from it. Plaintiff testified that she was not particularly acquainted with the locality and surroundings where she was hurt, but knew the gates were there and the purpose for which they were used, and knew that trains passed that point at frequent intervals. Plaintiff also testified that she did not anticipate the gate would be let down upon her and did not look to see that it was being let down when she started to cross, and did not know that it was coming down until it struck her.

Lewis Hibbler was the tower man who controlled the four gates from the tower. His testimony is that there is an ordinary school bell in the tower which he rings just before letting down the gates for the purpose of giving warning to the people on the streets to keep back. On the occasion of plaintiff's injury, a train was coming from the west over the St. Louis & San Francisco tracks and was due within two or three minutes. He states that he saw a man and wagon on Manchester avenue, and also saw a man and wagon on Tower Grove avenue, between the two gates, and rang his bell and as soon as these wagons were out of the way he let down the gates. He did not see the plaintiff at any time. Before letting down the south gate on Tower Grove avenue, he glanced at the gate and street and saw no one and then let down the gate. After glancing at the street and seeing it clear, he looked in another direction and did not know until the next morning that plaintiff was struck by the gate; that there was nothing to obstruct his view of the street and gate, but he "could not look in two directions at one time" and could not keep his eyes "on one of the gates all the time," that he saw the gate when it started downward but did not look toward it afterwards.

Plaintiff testified as did several other witnesses,

O'Keefe v. Railroad.

that they did not hear the bell, if it was rung. Plaintiff further testified that there was no train in sight when she crossed the tracks and she did not anticipate the gates would be let down, and no train actually arrived until two or three minutes after she was knocked down.

Two legal propositions are presented by this evidence: First, was the defendant company guilty of negligence? If so, was the plaintiff also guilty of such contributory negligence as to bar a recovery? In respect to the first proposition, the law is that it was the duty of the gateman to exercise ordinary care in the operation of the gates to avoid letting them down on any one in the street. This duty was not performed by the gateman merely glancing at the street, as he began to turn the crank and lower the gate, and then turning his eyes in another direction and looking away from the gate he was lowering until after it was down. The exercise of ordinary care required the gateman to keep the gate under his control at all times and to keep his eyes on the street while lowering the gate. If he had performed this duty, the accident would not have happened.

In Feeney v. Railroad, 5 L. R. A. 544, the facts were that plaintiff (a woman) walking in the night-time, during a rain with an umbrella raised, approached a street crossing where there were gates. As she approached the gates, she saw they were up and without looking further proceeded on her way. The gateman let the gates down more rapidly than usual and struck and injured plaintiff. The gateman testified that he kept his eyes on the gate as it was being lowered but did not see anyone. The New York Court of Appeals, on this state of facts, held: "The evidence warranted the jury in finding that the defendant omitted to observe that degree of care required by the circumstances, and that, owing to such omission, the plaintiff was injured. It was the duty of the defendant to use due

care in operating the gates so as to protect persons traveling the public highway, not only from being run over by the cars, but also against injury from the gates themselves.

"If on reaching a crossing protected by safety gates, a person finds them raised and motionless, he is at liberty to go on, and, if it becomes necssary to lower the gates while he is passing between them, it should be done with all the care demanded by the peculiar situation, and with due regard to the safety of human life."

2. Does the plaintiff's evidence convict her of such contributory negligence as to bar recovery, is the second proposition to be determined: The evidence tends to show that the gates were up when plaintiff started to cross the street. She testified that she did not look at the gates at all and did not anticipate that the south gate would be lowered, for the reason no train was in sight and she heard no bell. This evidence tends to show some negligence on the part of plaintiff; but we do not think it is sufficient to warrant an appellate court to declare, as a matter of law, that plaintiff was guilty of negligence that directly contributed to her injury. The question was one of fact for the jury to decide under all the facts and circumstances shown by the evidence. Lamb v. Railroad, 147 Mo. l. c. 185, 48 S. W. 659; Gratiot v. Railway, 116 Mo. l. c. 466, 21 S. W. 1094; Lorenz v. Railroad, 56 L. R. A. 752; Feeney v. Railroad, supra. We conclude that the case was one for the jury and the motion to nonsuit plaintiff was properly denied.

3. The defendant asked, but the court refused, the following instructions:

"3. The plaintiff is presumed to have known what she would have seen by the exercise of ordinary and reasonable observation.

"5. When the plaintiff walked under the gate it was her duty to have looked at it to see whether it was stationary or about to descend, and if you should find

O'Keefe v. Railroad.

from the evidence that she failed so to look, then she would not be entitled to recover.

"6. If you should find from the evidence that the plaintiff walked under the gate while it was descending, then she would not be entitled to recover.

"7. The defendant had a right to lower the gate in question in order to block the crossing against the approaching train, and was not bound to anticipate that the plaintiff would walk upon the street under the gate, but had a right to presume that the plaintiff would not do so.

"8. If you should find from the evidence that at the time the gate was begun to be lowered the plaintiff was not walking in the street under the gate, but was walking on the sidewalk, then the defendant had the right to lower the gate and to presume that the defendant would not walk under it."

Instruction No. 3 is a mere abstraction and was for this reason properly refused. The fifth one is not correct. It was not plaintiff's duty to continually watch the gate as she crossed the street, if it was up, as the evidence tends to show, when she started to cross the street and no train was in sight and no warning of any kind was given that it was about to be lowered. She had a right to presume that it would remain up until the approach of a train would require it to be lowered. The sixth instruction is open to the same objection as the fifth. The seventh is not the law. The gateman was bound to assume that persons might be on the street and it was his duty to look out for them and keep his gate under control as he lowered it so as not to injure them. The evidence shows that the gate was lowered by turning a crank, that it came down slowly when properly operated, and the gateman could stop it at any point in its descent. In such circumstances the law is that it was his duty to have the gate under his control and avoid letting it down on any one who might be in the street, and he had no right to assume that

people whom he may have seen on the sidewalk would not step upon the street and pass under the gate when, as the evidence tends to show, people were in the habit of doing this and passing under the south gate on Tower Grove avenue to reach the car in the middle of the street and near the gate. For these reasons we think the eighth instruction was erroneous and was properly refused.

Discovering no reversible error in the record, the judgment is affirmed. All concur.