## WILLIAM BEARD, Appellant, v. MISSOURI PACIFIC RAILWAY COMPANY.

### Division Two, October 9, 1917.

1. **NEGLIGENCE: Pedestrian on Track: Evidence of Signals at Crossing.** Where defendant's unfenced spur track ran through a thickly settled community, and the use of the track by pedestrians had been acquiesced in for years by defendant, and its trains were run over the track not for public convenience but at irregular intervals in hauling coal, evidence that no bell was rung or whistle sounded just before or at the time of backing the loaded cars over the track on which the deceased was walking when struck, is competent, and is not to be excluded on the theory that the statutory duty to give such signals at a road crossing does not pertain to a pedestrian on a track 150 feet from a public crossing.

2. ———: ———: ———: **Instruction: Anticipating Pedestrian on Track.** It being the duty of the railroad company to ring the bell or sound the whistle when it approached that portion of its track used for travel by pedestrians, it was error to instruct the jury that their verdict must be for defendant unless the trainmen saw or by the exercise of ordinary care could have seen the deceased in a position of peril and thereafter failed to stop the train in time to avoid striking him, especially when the facts point to the conclusion that the failure to give either of the signals tended to cause the injury. That neither of the trainmen saw the deceased did not lessen the duty to give one or the other signal.

3. ———: **Instruction: Based on Conjecture: Climbing on Car.** The giving of an instruction which attempts by inference based on conjecture to define the limit of defendant's liability is error. To tell the jury that their verdict must be for defendant if the deceased fell or was thrown under a moving train in an attempt

to climb on the cars, where there is no testimony from which the conclusion can reasonably be drawn that he made such an attempt, is error.

4. ——: ——: **Result of Mere Accident.** Where the injury was caused either by the negligence of defendant or that and the contributory negligence of deceased, an instruction that if the injury was the result of a mere accident plaintiff cannot recover, should not be given.

5. ——: ——: **Trespasser.** The deceased was not a trespasser when struck by defendant's train while walking on a portion of its track which ran through a thickly settled community and was much used as a pathway by pedestrians with defendant's acquiescence; and an instruction limiting defendant's liability on the assumption of trespass was erroneous.

6. ——: **Ordinary Care: Lookout on Rear of Backing Train.** In backing a long train of cars over a portion of its track on which pedestrians had a right to be and frequently traveled, ordinary care requires that a railroad company place some one on the last car to look out for such persons.

Appeal from Saline Circuit Court.—*Hon. Samuel Davis,* Judge.

REVERSED AND REMANDED.

*Charles Lyons, Carl L. Ristine* and *Reynolds & James* for appellant.

(1) The court erred in refusing to permit the plaintiff to prove that the defendant neglected and failed to ring the bell or sound the whistle in order to warn the deceased of the near and dangerous approach of its train, because in this case its servants in charge of its train had no right to expect a clear track at the place where deceased was killed and it was their duty to see deceased and warn him by the use of the bell and the whistle. Reyburn v. Railroad, 187 Mo. 572; Morgan v. Wabash Ry. Co., 159 Mo. 283; Hinzeman v. Railroad, 199 Mo. 64; Hinzeman v. Railroad, 182 Mo. 626; Feldman v. Railroad, 175 Mo. App. 637; Walker v. Wabash Ry. Co., 193 Mo. App. 270. (2) The court erred in giving instruction numbered 2 on behalf of the defendant, because it limited the duty of the defend-

ant to the sole proposition of whether or not the train could have been stopped in time to avoid striking deceased, and leaves out entirely the duty to warn deceased by ringing the bell and sounding the whistle, and injects a matter into the case without evidence to support it, namely, whether deceased was attempting to climb onto the train. Rashall v. Railroad, 249 Mo. 521, and cases cited above. (3) The court erred in giving instruction numbered 3 on behalf of the defendant, because it disregarded all of plaintiff's evidence of negligence and left the matter of what constituted an accident to the conjucture and speculation of the jurors. Simon v. Met. St. Ry. Co., 178 S. W. 450; Wise v. Transit Co., 198 Mo. 559; Beave v. Transit Co., 212 Mo. 355; Felver v. Railroad, 216 Mo. 209; Zeis v. Railroad, 205 Mo. 650; Lagarce v. Railroad, 183 Mo. App. 86. (4) The court erred in giving instruction numbered 4 on behalf of the defendant, because there was no evidence upon which to base said instruction, and it invited the jury to speculate and draw upon their imagination in determining the issues in the case. Degonia v. Railroad, 224 Mo. 588; State ex rel. v. Morrison, 244 Mo. 211; Simon v. Met. St. Ry. Co., 178 S. W. 450; Feldman v. Railroad, 175 Mo. App. 639; Small v. Ice Co., 179 Mo. App. 464; Scott v. Smelting Co., 187 Mo. App. 359; Kinney v. Nat. Newspaper Assn., 193 Mo. App. 343. (5) The court erred in giving instruction numbered 6 on behalf of the defendant, because it required the deceased to make all possible precautions for his safety, and eliminated the gist of this kind of an action, namely, that even though the injured party was negligent, defendant is nevertheless responsible for the hurt, because it could have avoided the injury entirely by exercising ordinary care and failed to do so. Rashall v. Railroad, 249 Mo. 521; Reyburn v. Railroad, 187 Mo. 573; Degonia v. Railroad, 224 Mo. 564; Gabal v. Railroad, 251 Mo. 257; Dutcher v. Railroad, 241 Mo. l. c. 164; Morgan v. Railroad, 159 Mo. 262; Walker v. Railroad, 193 Mo. App. 249; Feldman v. Railroad, 175 Mo. App. 629.

*Edward J. White, James F. Green* and *Harvey C. Clark* for respondent.

(1) The testimony offered by the plaintiff on failure of the defendant to ring the bell or sound the whistle was properly excluded, because: (a) The defendant stood upon the proposition that the deceased was not upon the track at all, and it was admitted that no signals were given and no effort to stop was made. This was pleaded in the answer, announced to the jury in the opening statement of counsel, appears throughout the record and defendant's witnesses so testified. (b) The questions of insufficient warning or of the engineer relying upon the deceased to step aside in due time, or of the ability of the engineer to stop the train, are not in the case. The respondent defended on the ground that deceased was not on the track at all and the cases cited by appellant have no application. (c) Appellant was not prejudiced by such refusal because the court gave his instruction Number 3 telling the jury it was the duty of the defendant to whistle and ring, and appellant's counsel were permitted to discuss the matter before the jury and to allude to the fact the defendant failed to give any warning whatever of the approach of its train. (d) The issue before the jury was square-cut as to whether deceased was on the track at all; this was the only issue. (e) The testimony offered by plaintiff and refused by the court relating to failure to ring and whistle at the Midway Mine a quarter of a mile south of scene of the accident was too remote. (f) It was not alleged or proven that the deceased was killed at a crossing, and hence the crossing cases cited by appellant have no application. (2) Defendant's Instruction Number 2 on the burden of proof and authorizing a verdict for the defendant if the jury was unable to determine the manner in which the deceased met his death is predicated on the evidence, does not purport to cover the whole case and incorporates all the elements necessary. (a) The physical facts and circumstances and defend-

ant's testimony indicated that the deceased met his death while attempting to climb on the train. (b) The issue of fact in this case was whether the deceased was or was not on the track. From appellant's standpoint defendant's negligence consisted in not seeing deceased, not in failing to warn him after he was seen. Defendant denied deceased was on the track at all. (c) This instruction applied the facts to the law from defendant's standpoint and should be considered in connection with plaintiff's instructions numbered 2 and 3. (d) Plaintiff's instruction numbered 3 presents appellant's theory on failure to give warning signals and he had the advantage of same before the jury notwithstanding there was no evidence to support it. (e) This instruction does not purport to cover the whole case, hence need not refer to failure to give signals, even if the evidence showed such failure and it was material. (3) Defendant's Instruction Number 3 submitting the question of a mere accident was proper under the facts in this case, and appellant was not injured thereby. Simon v. Met. St. Ry., 178 S. W. 449; Sawyer v. Railroad, 37 Mo. 262; Henry v. Grand Ave. Ry. Co., 113 Mo. 525; Beauvais v. St. Louis, 169 Mo. 500; Feary v. Railway, 162 Mo. 99. (4) The defendant's demurrer at the close of all the testimony should have been sustained. A verdict will not be set aside because of erroneous instructions or on account of errors in admitting testimony if on the whole record the verdict was for the right party. Bartley v. Street Ry., 148 Mo. 143; Baustian v. Young, 152 Mo. 325; Homuth v. Street Ry., 129 Mo. 643; Kelly v. Railway, 153 Mo. App. 114.

WALKER, P. J.—This is an action brought by an administrator for damages for the death of one Arthur Beard, alleged to have been caused by the negligence of the defendant. The cause of action arose in Lafayette County, where the suit was instituted, but upon a change of venue it was tried in Saline County, resulting in a majority verdict for defendant, from which plaintiff appealed.

The deceased was killed February 28, 1913, by being struck by a loaded coal car; it was one of ten of a like character then being pushed or backed along a spur track by one of defendant's engines. This engine was narrower than its tender, which was between the engine and the cars, and was also loaded with coal, as were the cars for about a foot or more above the top of each. The length of the train, exclusive of the engine, was about 500 feet. No one saw the car strike deceased, but the facts adduced in evidence, accompanied by the attending circumstances, sustained the conclusion that the deceased was at the time walking in the middle of the track with his back to the train when the engine backed the cars down on him and killed him. There was no one at the end of the last car from the engine at the time. One of the brakemen had a few minutes before been left at a switch. The conductor had gone into the mine office near the track to get the coal billing. The other brakeman was setting the brakes on the ninth and tenth cars from the engine and as he says at the same time "looking straight down the track" when he dropped off 200 feet south of where the deceased was struck and was not aware of it until after he had gotten down on the ground and saw a miner's bucket roll out from under the cars.

The spur track upon which the killing occurred had been built and was then being used by defendant to connect its main line with certain coal mines located about two and one-half miles south of the city of Lexington. The deceased was a miner and was en route from the mines to his home when killed. The tracks run north and south at the place where the killing occurred. About 200 feet south of where the body of the deceased was found a public road crossed the tracks. No bell was rung or whistle blown when the train crossed this road. Seventy-five feet further south the switch or spur track leaves the main track in a southeasterly direction. The train before backing down upon the deceased, stopped just north of the divergence of the switch track from the main line. Many miners and others lived in the immediate neighborhood. In the middle of the spur track there was a beaten path-

way which for years had been used, with defendant's knowledge and without its protest, by pedestrians. Miners used it in going to and from their work; women used it in going to and from Lexington and other parts of the neighborhood; and children used it in going to and from school and for other purposes. So general was this use that a former employee of the defendant, a conductor, stated that when he ran a train over this spur it was often necessary to whistle to get women and children off the track; and that this pathway had been thus used ever since the spur track was put in. This use is explained by the fact that the smooth surface between the rails afforded a better place for walking than on either side where the ground was rough and sloped abruptly from the ends of the ties.

It was snowing and the wind was blowing from the north at the time of the killing. The last time the deceased was seen alive was four or five minutes before he was killed; he had just left the mine where he had been at work and was walking with his dinner bucket in his hand in a northerly direction in the middle of the spur track. Persons who first arrived upon the scene saw the tracks of one person between the rails in the snow leading northward from the public crossing to the place where deceased was struck; this place was located by the tracks of the person terminating abruptly, followed by marks in the snow as though a body had been pushed along from that point with the toes dragging on the ground. Following this the snow had been rubbed off of the west rail, and from thence to where the body was found the rail was smeared with blood and pieces of flesh for a distance of about 120 feet. Witnesses for the plaintiff testified a specifically in regard to this phase of the case as follows: "We found his tracks right there where he had been walking down the middle of the track right between the rails. We noticed where he was struck. We could tell from his toe prints where the train hit him. The train just raised him up and dragged him along for about ten feet and there were no marks at all after that until where he hit the rail on the west side. It looked there like somebody had been drug and then on the first joint was where the flesh and

blood was torn off; and further on it was torn off all the way. The distance the body had been dragged was about four rails. They were thirty-foot rails. When we went back to make the examination there was just one track between the rails and our tracks on each side where we had walked down to him.''

This rule of the defendant was introduced in evidence: "102. Where cars are pushed by an engine (except when shifting and making up trains in yards) a flagman must take a conspicuous position on the front of the leading car and signal the engineman in case of need.''

The theory of the defense is that the deceased was not walking between the tracks when killed, but that he was outside of the rails, and the inference deduced, in the absence of testimony, from the statements of the engineer and brakeman, because they state they did not see him, is that he was not struck while walking between the rails, but while on one side of the track in an attempt to climb on one of the cars. The testimony of the engineer in this regard is that he was sitting in the cab of the engine when the accident occurred and in looking out over the ten cars he could see fifty or seventy-five feet ahead of the last car but saw nothing on the track. The brakeman, who was at the time on the ground going back towards the engine, also says he saw nothing on the track. His testimony in this regard is contradicted by a witness for the plaintiff who testified that the brakeman told him immediately after the occurrence that he had ''seen a man on the track in front of the cars who suddenly disappeared and he didn't see him any more until his dinner bucket rolled out and he looked and saw his body on the track.''

The conductor, who was apprised of the killing by the brakeman after the latter had jumped from the train, stated on direct examination that he noticed at the crossing where a man had come off of the side of the road and started down on the outside of the track; that these tracks extended down about 150 feet from the crossing where they turned in directly towards the track. There the snow was raked off of the outside of the rail for about fifty feet from where the body of the deceased was

found on the ties next to the rail; that the wheels of but one car and one pair of trucks of another car had passed over the body. A former statement of this witness, taken under oath soon after the occurrence, was introduced, wherein he stated that he had examined the cars to see if there was blood on them and that he found blood on the tenth or last car from the engine and that six cars and one pair of trucks had passed over the body.

A synopsis of the pleadings will enable the issues submitted to be more readily understood.

Following the usual formal allegations necessary in a case of this character the petition alleges the frequent use by pedestrians of the spur track on which the killing occurred, defendant's consent to such use, the negligent killing of the deceased by the backing of defendant's cars down upon him while he was walking northward on the track unaware of the approach of the train; that through the exercise of ordinary care on the part of the defendant's employees operating the train they could have become aware of the presence of the deceased on the track and have thus averted striking and killing him; that they negligently failed thus to do and thereby caused his death; that they failed to sound the usual or ordinary signals in time to avert the killing of the deceased in that they did not at any time sound the whistle or ring the bell or give any other signal by which the deceased might have been warned of the near and dangerous approach of the train; and that they failed to have stationed at the front end of the foremost car going northward on said train at the time of the killing a brakeman or switchman to be on the lookout for persons on the track so that the engineer, thus informed, might have been enabled by stopping said train to have averted injury to persons on the track as required by the rules of said company, and that the train was not equipped with air-brakes connecting the cars with the engine with a whistle attached so that the train might be stopped in time to avert injury to persons on the track; that the train was not being operated with a sufficient crew as required by law and by reason of its negligent and careless operation by defendant's employees and their failure to comply with defendant's own rules and

the laws of the State the death of the deceased was caused. Following this is the usual prayer.

After a general denial the answer avers that the deceased went upon defendant's property as a trespasser and that his death was due solely to his own negligence in so doing; and that he disregarded his own safety by placing himself in a position of peril with reference to defendant's moving train where he well knew he was in great danger of being injured and killed, all without the knowledge or negligence of the defendant; that the death of the deceased, who was at the time a trespasser, was the result of his own negligence in placing himself in dangerous proximity to defendant's moving train, as defendant avers and believes, in his attempting to climb upon said moving train without the knowledge and consent of the defendant and without negligence on its part. This is followed by counts alleging the unconstitutionality of Section 5425, Revised Statutes 1909, not here insisted upon as error.

The reply was a general denial.

The instructions given at the instance of defendant, of which complaint is made, are as follows:

"2. The court instructs the jury that the burden is on the plaintiff to make out his case to your reasonable satisfaction by a preponderance of the evidence. And if you are unable to determine from the testimony and all the facts and circumstances in evidence whether the deceased, Arthur Beard, was struck by the defendant's train while walking on the track, and that the defendant's employees saw, or by the exercise of ordinary care, could have seen him, and that they discovered or by the exercise of ordinary care could have discovered that he did not intend to step aside before the train struck him, and after discovering that he did not intend to so step aside, could have stopped the train in time to avoid striking him, or whether he fell or was thrown under the train while attempting to climb thereon, then your verdict must be for the defendant.

"3. The court instructs the jury that if you find and believe from the evidence the death of Arthur Beard was the result of mere accident, then your verdict must be for the defendant.

"4. The court instructs the jury that if you believe and find from the evidence that the deceased, Arthur Beard, attempted to climb upon the defendant's train for the purpose of riding thereon, and that in doing so he fell or was thrown under the wheels of the same and killed, then your verdict must be for the defendant.

"6. The court instructs the jury that there is no liability on the part of the railroad company from the mere fact, if you find it to be a fact, that one of its cars struck the deceased while he was walking on defendant's track, nor is there any presumption that the defendant of its employees were guilty of any negligence because of the fact that the deceased was struck by one of its cars, for it was the duty of the deceased to look for approaching trains and to take all possible precautions for his own safety."

I. Error is assigned in the exclusion of testimony as to whether the bell was rung or the whistle sounded just before and at the time of backing the loaded coal cars over the right-of-way where the deceased was killed. It will be recalled that 150 feet south of where the killing occurred there was a public crossing over defendant's track, and the trial court, acting evidently upon the theory in the exclusion of the proffered testimony that it should be limited in behalf of persons about to use, using or who had just used this crossing, held, under a number of authorities here and elsewhere (Stillson v. Railroad, 67 Mo. 677; Bell v. Railroad, 72 Mo. 1. c. 58; Dahlstrom v. Railroad, 96 Mo. 101; Burger v. Railroad, 112 Mo. 246; Everett v. Great Northern Ry. Co., 100 Minn. 309; Randall v. Railroad, 109 U. S. 478; Gibson v. Leonard, 143 Ill. 182, 17 L. R. A. 588), that the testimony was inadmissible. From the above citations we have excluded those in which the injured party was an employee of the defendant.

*Signals at Crossing.*

If the defendant's negligence which caused the injury had been predicated upon its failure to give one of the signals required by the statute (Sec. 3140, R. S. 1909) at the crossing, the exclusion of the testimony would have been authorized under the cases cited. The defendant, in the absence of any modifying facts, would have had the right to expect a clear track except at or near the crossing, and the deceased under such circumstances if injured elsewhere would have been entitled only to those rights accorded by law to a trespasser, viz., freedom from wanton or wilful injury by the employees of the defendant if they knew of his presence or after discovery of same could by the exercise of ordinary care and prudence have avoided injuring him. [Frye v. Railroad, 200 Mo. 1. c. 405; Barker v. Hannibal & St. Joseph Ry. Co., 98 Mo. 1. c. 53.]

Modifying facts, however, impose a duty upon the defendant in addition to that required by the statute (Sec. 3140). While the defendant's track did not at the point where the deceased was injured run through a town, the vicinity was thickly settled on each side of the road and like physical reasons existed for the giving of such signals as are necessary in a city or town; there was no fence enclosing the right-of-way and the use of the middle of the track each day by hundreds of pedestrians had been acquiesced in for years by the defendant. The track was a switch or a spur, not a part of the main line. It was used incidentally for the public convenience but principally to enable the defendant to transport coal from the mines to its main line. Trains did not run over this spur at regular intervals and hence the public could not know when the track would be occupied. The infrequent operation of trains thereon naturally lessened the apprehension of danger which otherwise might have been felt by persons using the track as a footpath and as a consequence rendered its use for that purpose more general. None of the convincing facts existed which would have authorized the defendant to expect a clear track as the same is defined

by LAMM, J., speaking for this court in Frye v. Railroad, supra. It could not, therefore, have been presumed that such a condition existed.

The acquiescence of the defendant for years in the use of. its track by pedestrians raised the presumption that the operatives of its train knew of such use at the point where the deceased was killed. He was, therefore, not to be regarded as a trespasser in so using the track and the defendant owed him the duty of exercising every reasonable precaution to avoid injuring him. [Frye v. Railroad, 200 Mo. 377, 98 S. W. 566, 8 L. R. A. (N. S.) 1069; Ahnefeld v. Wabash Ry. Co., 212 Mo. 280, 111 S. W. 95; Eppstein v. Mo. Pac. Ry. Co., 197 Mo. 720, 94 S. W. 967; Hufft v. Railroad, 222 Mo. 286, 121 S. W. 120; Cotner v. Railroad, 220 Mo. 284; Burger v. Railroad, 112 Mo. 246.] One of these precautions, in addition to keeping a lookout for his presence on the track, was that it use the resonant warnings, to-wit, the bell or whistle, with which its engines are equipped. There was no defect in any of the physical senses of the deceased. Walking away from the train he could not see it; but being only 150 feet distant from the point where the train ran upon the track most used by pedestrians, if either the bell had been rung or the whistle sounded it is reasonable to conclude that he would have heard it and this calamity would have been averted. Testimony, therefore, as to whether or not this precaution was used is relevant to determine if the defendant was in this regard negligent; the trial court, therefore, erred in its exclusion.

II. The giving of instruction numbered 2 at the instance of the defendant is assigned as error. It directs a verdict for defendant unless its employees saw or by the exercise of ordinary care could have seen the deceased in a position of peril and after discovering that he did not intend to leave the track they could have stopped the train in time to have avoided injuring him, or if he fell or was thrown under the train in an attempt to climb on the cars. It was incumbent up-

Instruction.

on the defendant to use every reasonable precaution in approaching the frequently used portion of its track to avoid injury to anyone who might be thereon. One of these precautions was that the bell should be rung or the whistle sounded. A statement of this prerequisite to free the defendant from negligence and its consequent liability is absent in this instruction. We held in Morgan v. Wabash Ry. Co., 159 Mo. 262, that it was the duty of the engineer to give such warning signals at hand as the situation reasonably demanded. If it was necessary as one of the conditions to free the defendant from negligence that the bell be rung or the whistle sounded upon approaching the frequently used portion of its track, then it was equally necessary that this duty be defined in the instruction as one of the conditions to defendant's freedom from liability. This is especially true where, as in this case, the facts point forcibly to the conclusion that the failure to give one or the other of these signals tended to cause the injury. [Hinzeman v. Railroad, 182 Mo. l. c. 625.]

When the Hinzeman case was here on a second appeal (199 Mo. l. c. 64), in discussing the duty devolving on a defendant to use every reasonable precaution to avoid an injury, we said that an instruction was erroneous which limited the duty of the defendant in the emergency named to stopping the train, and if the peril was discovered too late to accomplish this end the defendant was not liable. This we held left out of view the sounding of the whistle, which under the plain evidence was an obvious duty. Its use under such circumstances is emphasized in the holding that the ringing of the bell alone may not suffice. It is true in the instant case that the conductor and brakeman state that they did not see the deceased before he was struck, but the fact of their failure to see him did not lessen their duty to use every reasonable precaution to prevent injury to anyone who might be upon this frequently used portion of the track. Under such circumstances the failure to ring the bell or sound the whistle was negligence and it was proper that the jury be so instructed.

There is no evidence either by express testimony or the presence of any circumstances from which the conclusion can be reasonably drawn that the deceased attempted to climb on the cars. The only testimony from which even an inference of this fact can be drawn is the statement of the conductor that he saw some tracks on the outside of the rail leading down to the point where the deceased was struck, which turned into the middle of the track. The only effort made to support this conjecture, for it is nothing more, first that these were the tracks of the deceased and second that he attempted to climb on one of the cars, was the statement of this same witness, expressly contradicted by him in a former sworn statement and by all of the other testimony, that there was no blood on the front car. From this the inference is sought to be drawn that the deceased was killed in an effort to climb on the third or fourth car. The latitude of our procedure, ample as is its extent, has never reached the point where it will authorize the giving of an instruction which attempts through the medium of an inference based on conjecture to define the limit of a defendant's liability in a case of this character. The assumption, therefore, that the death of the deceased was caused by his attempting to climb on the cars was without foundation and the instruction was in this respect erroneous.

Instruction numbered 3, given at the instance of the defendant, is also assigned as error. Under a proper state of facts an instruction is proper which authorizes an acquittal if the jury believe that the injuries sustained were the result of mere accident. Some of the cases cited by defendant in this regard are of this character, others are to the contrary. Where, as in the instant case, the death of the deceased was caused either by the negligence of the defendant or by that and the contributory negligence of the deceased, there is no authority for the giving of this instruction. [Simon v. Railway Co., 178 S. W. 449.] In this case Roy, C., carefully reviews the cases pro and con on this subject.

Defendant's instruction numbered 4 is erroneous for the same reason which led to the condemnation of the

latter part of instruction numbered 3, viz., that there was no testimony on which to base the hypothesis that the deceased was attempting to climb on one of the cars at the time he was killed.

Instruction numbered 6, given at the instance of the defendant, is erroneously based upon the assumption that the deceased was a trespasser at the time he was killed and the liability of the defendant is as a consequence improperly limited.

In view of what has been said it is not necessary to discuss the question as to whether the defendant was negligent in not having some one on the lookout on the last car of the train during the entire time that the train was backing over the frequently used portion of its track. This would have been not only in conformity with defendant's own rule, but the employment of ordinary care not shown to have been exercised when only one brakeman was on the rear end of the front car setting brakes until a short time before the deceased was struck, when he, the brakeman, jumped off to throw a switch or cut out the engine, at which time the deceased was run down and killed.

From all of which it follows that the judgment of the trial court herein should be reversed and remanded that the case may be tried in accordance with this opinion. It is so ordered. All concur; *Faris, J.,* in result.