Action for damages for the death of J.W. Sullivan, the husband of plaintiff. Verdict and judgment for plaintiff for $4500 and defendant has appealed.
The defendant offered no evidence and there is no substantial conflict in the testimony. The servants of defendant were backing a train of fourteen or fifteen flat cars in an easterly direction on the main track of the railroad at the Two of Gideon in New Madrid County. As this train reached a much travelled street crossing in the town, the deceased who was passing north along the street stepped on the track immediately in front of the end car of the train. This car struck him but did not knock him down. He caught with one arm over the flat car and while hanging in that position was carried a considerable distance when he lost his hold, fell to the ground and was run over and killed. The track was level, the train running slowly, the sight and hearing of deceased were both good and had he looked, he could have seen the moving train before he stepped on the track in front of it. There was evidence that the statutory duty of those in charge of the train to sound the whistle or ring the bell was not observed, neither was any person standing at the end of the train as it backed toward the crossing to warn persons that might be approaching the track or to signal the engineer to stop if occasion should require. There was also evidence that if the servants of defendant in charge of the train had kept a lookout for persons at the crossing, the deceased could have been seen both at the time he was struck and while he was being carried along and that the train could *Page 22 
have stopped before he lost his hold on the car and fell and was run over. This evidence in detail may be briefly stated as follows:
Mr. Harris, for plaintiff, testified that he heard some women screaming and looked around and saw Sullivan with his left arm up on top of the flat car. He did not see the car strike him. Sullivan was about fifty or sixty feet east of the crossing when he was run over. The train was moving five to eight miles per hour, just to guess at it. There were fourteen or fifteen cars in the train.
Mr. Smith saw the car strike Sullivan. He was on the west side of the crossing when struck. The train was running slowly, about what a man would walk — not over five miles per hour. The street is forty or fifty feet wide. This crossing narrows when it reaches the railroad track to about half that distance. The track was straight. There was no rain or sleet.
Mr. Chad testified that the train was running four or five miles per hour, about as fast as a man can walk.
Mr. Wilhelm testified that he was an engineer and had worked for appellant twelve years. Had ten years experience operating trains. Was familiar with the operation of the kind of engines they had. Did not know the condition of this engine, but it was equipped with steam jam instead of air brakes. To stop a train similar to this one in twenty or twenty-five feet would be a good stop. Stop might be made in eighteen feet. If the steam jam brakes were not working and you had to stop the engine by just using your reverse lever it would take probably fifty or sixty feet to stop the train. (There was no evidence that the steam jam brakes on this engine were not working at the time of this accident.) Ordinarily it would take the engineer three or four seconds to receive the signal, get his hands on the appliances and apply it to the point where it would begin to be effective.
Mr. Fowler testified that the ground was level. The cars attached to this train were log cars, thirty-four foot *Page 23 
flat cars. The cars were equipped with ordinary couplings. Most of the cars were in good condition except a little worn out in the draw-heads, causing four to six inches of slack. Considering the slackness in these cars and condition of the track I don't think a man could stop any quicker than two car lengths if the train was equipped with steam jam brakes that were in working order. If the cars had no slack and a good engine it could be stopped within eighteen feet.
At the close of the testimony the defendant filed a demurrer thereto which was overruled and that action of the court is assigned as error. It is contended that the evidence shows as a matter of law that the deceased was guilty of contributory negligence and for that reason plaintiff could not recover. We agree that the evidence does show that the deceased was guilty of contributory negligence which, on the question of negligence or no negligence alone, would bar recovery. It is thoroughly settled in this State that a railroad track is in and of itself a warning of danger and it is the duty of every person who is sui juris
and of mature years and in possession of his faculties of sight and hearing to look out for passing trains in approaching a railroad track, and when such a person steps upon the track immediately in front of a moving train without looking, if he could see, and without listening, if he could hear, and is injured, he is guilty of contributory negligence as a matter of law and cannot recover. [Keele v. Railroad, 258 Mo. 62, 167 S.W. 433; Burge v. Railroad, 244 Mo. 76, 148 S.W. 925; Rollison v. Railroad, 252 Mo. 525, 160 S.W. 994; Reeves v. Railroad,251 Mo. 169, 158 S.W. 2.]
Many other cases hold the same thing. If plaintiff can recover at all in this case, it must be upon the humanitarian doctrine. That rule is based upon the humane principle that no one should be permitted to wantonly or recklessly injure another after his danger is or ought to have been discovered. In applying this rule to railroad cases the place where the injury occurs is important. Should an injury occur at a place where those in charge *Page 24 
of the train had a right to expect a clear track and a trespasser is struck and injured, the company cannot be held liable unless its servants could have avoided the injury after they actually discovered the peril of the person injured. But when the injury occurs at a much travelled public crossing or other place where those in charge of the train may expect persons to be rightfully on the track, a different rule prevails. The same rule of duty and logic that requires a person approaching a railroad track to look out for his own safety, also requires those operating the train when approaching a public crossing or other place where persons may be expected to be travelling on or across the track at all times, except when a train is passing, to also look out for such persons, and should a person be found on the track at such a place, then those in charge of the train must use ordinary care to see that he is not injured, notwithstanding the person may be there by reason of his own negligence. At such a place, the same rule of law that requires a person approaching the track to look out also requires those in charge of the train to look out. If both are negligent and the injury cannot be averted after the peril of the person on or approaching the track is or ought to have been discovered, there can be no recovery. At a place of that character, those in charge of a train approaching the crossing, like the person the highway approaching the track, must be held to have seen whatever could have been seen by the use of ordinary care whether it was in fact seen or not. That principle is as thoroughly recognized as is the one that holds the party who steps upon a railroad track immediately in front of a moving train guilty of contributory negligence as a matter of law. [Keele v. Railroad, 258 Mo. 68, 78, 167 S.W. 433; Rollinson v. Railroad, 252 Mo. 525, 537, 160 S.W. 994; Murphy v. Railroad,228 Mo. 56, 84, 128 S.W. 481; Everett v. Railroad, 214 Mo. 54, 91-92, 112 S.W. 486; Beard v. Railroad, 272 Mo. 142, 154, 197 S.W. 907; Goben v. Q.O. K. Ry. Co., 206 Mo. App. 5, 11, 226 S.W. 631.] *Page 25 
Keeping the foregoing rule in view and looking at the testimony in the light most favorable to plaintiff, as we must do when considering a demurrer to the testimony, we find that the evidence was sufficient to authorize the jury to find the following facts which should be considered in determining the liability of defendant under the humanitarian rule. The accident occurred at a public street crossing in town where persons might be expected to be on the track at any time. This imposed on those in charge of the train the duty to keep a look out for persons on the track. The track was straight, the ground level, the train consisted of fourteen or fifteen flat cars, hence there was nothing to prevent the engineer or a person stationed on the train as a look out from having seen Sullivan at the time he was struck. The defendant, then, must be held to the same responsibility as would attach if he had been, in fact, seen by those in charge of the train when he was struck. Since Sullivan was, or ought to have been, seen by those in charge of the train at the time he was struck, the liability of defendant must be determined upon the humanitarian rule upon what occurred after he was struck. Sullivan was struck at the west side of the crossing and carried to a point fifty or sixty feet east of the crossing before he lost his hold and fell and was run over and killed. The crossing was at least twenty feet wide, which would make the total distance Sullivan was carried after he was struck not less than seventy to eighty feet. If the train were moving but four miles per hour, as the jury may well have found from the evidence, it would move about six feet per second. If we allow four seconds for the engineer to receive a signal and apply the brakes the train would travel twenty-four feet while that was being done. The evidence shows a slackening of four to six inches to each car while stopping. Counting fifteen cars and allowing six inches of slack to each car, the farthest car from the engine on which Sullivan was hanging would run seven and one-half feet on account of the slack. Mr. Wilhelm, an engineer, testified that a train like this one *Page 26 
could be stopped in twenty to twenty-five feet when running four to five miles per hour. Allowing twenty-five feet for stoppage and adding to that the twenty-four feet the train would travel while the engineer was getting the signal and setting the brakes and the seven and one-half feet for the slack it will be seen that if Sullivan had been discovered when he was struck, as he should have been, the car on which he was hanging and being carried along could have been stopped in a distance of fifty-six and one-half feet after he was struck. If we take seventy feet as the distance he was carried the train ran thirteen and one-half feet beyond the point where it ought to have been stopped before Sullivan fell off. If we take eighty feet as the distance he was carried, as the jury may well have found, then he was carried twenty-three and one-half feet beyond where the train might, and ought to, have been stopped. If we count the train as running five miles an hour instead of four miles, it would run seven and one-third feet per second and would travel twenty-nine and one-third feet while the engineer was getting the brakes set but the train could still have been stopped at sixty-one and five-sixths feet or eight and one-sixth feet under the seventy feet or eighteen and one-sixth feet under eighty feet that the train ran after striking Sullivan before he fell off and was killed.
That deceased was guilty of contributory negligence in stepping on the track immediately in front of the backing train, there can be no question and had he been killed when first struck, there could be no recovery. We think there was, however, sufficient evidence to take to the jury the question of the duty of those in charge of the train to have seen deceased when the backing train struck him and to have seen his position of peril as he hung on the end of the car and also the question whether the train could, with ordinary care, have been stopped before deceased lost his hold on the car and fell, and on that theory and that only, should the case have gone to the jury. The demurrer to the testimony was properly overruled. *Page 27 
The court was very accommodating in this case and after overruling the demurrer to the evidence gave all the instructions asked by both sides though some of them were in direct conflict and otherwise erroneous. In view of what we have said, it will not be necessary to discuss these instructions. The errors they contain will necessitate the reversal of the judgment. Upon another trial, unless the testimony is materially different, the case should be submitted to the jury upon the one issue of the application of the humanitarian rule based on the duty of defendant to have discovered the peril of deceased and the ability to have stopped the train thereafter and before he fell and was run over.
The judgment will be reversed and the cause remanded. Bradley,J., concurs.
FARRINGTON, J., dissenting, holds that the judgment should be reversed outright because there is insufficient evidence to base a finding of negligence under the humanitarian rule. The time within which to act after the deceased was struck through his own negligence until he was run over by the train was too short. A verdict of finding defendant's agent guilty of negligence under these circumstances could only be based upon the wildest conjecture.