MICHAEL B. LYNCH v. MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, a Corporation, and ROBERT I. GOWAN and AL BRYAN, Appellants.—61 S. W. (2d) 918.

Division Two, June 24, 1933.*

*NOTE: Opinion filed at October Term, 1932; April 20, 1933; motion for rehearing filed; motion overruled at May Term, June 24, 1933.

90

*Carl S. Hoffman* and *Pendleton & Martin* for appellants.

*W. G. Lynch* and *Harvey & Bellamy* for respondent.

FITZSIMMONS, C.—From a judgment in the sum of $10,000 defendants appeal. Defendants Robert I. Gowan and Al Bryan were engineer and fireman respectively operating a locomotive of defendant railroad company when the locomotive struck an automobile in which Michael B. Lynch was a guest passenger. The collision occurred at the intersection of State Highway No. 5 with the defendant railroad company's tracks in the city of New Franklin in Howard County, Missouri. The cause was tried in Saline County on change of venue. Appellants complain that their demurrers should have been sustained and that the trial court also erred in excluding evidence and in giving respondent Lynch's main instruction. No question is raised as to the amount of the verdict or as to the permanency of respondent's injuries. The case went to the jury upon charges of violation of a speed ordinance and failure to ring the bell of the locomotive.

I. We first will pass upon the merits of the demurrers. Respondent Lynch was a farmer living near Glasgow in Howard Coun-

ty. He had been in Boonville, Cooper County, during the day of April 28, 1929, and he left Boonville for Fayette, Howard County about 12:30 A. M. on the morning of April 29, in a Ford sedan owned and driven by A. B. Bergwin of Fayette. Bergwin had invited Lynch and also Roland K. Stegner (in the day) to ride with him to Fayette. Lynch sat beside Bergwin on the right hand side of the front seat, and Stegner was in the rear seat. At New Franklin Highway No. 5 runs north toward Fayette and appellant railroad company's tracks run east and west. There are nine tracks consisting of the main track, seven switch tracks south of the main track, and one storage track north of the main track. The accident happened on the main track. The railroad station at New Franklin is about 250 feet east of the crossing. There are two electric lights on top of high poles upon the railroad property east of the crossing, west of the station and north of the main track. The train which collided with Bergwin's automobile came from the east. It was an extra, made up of empty baggage cars which were being hauled from St. Louis to Franklin Junction, one mile west of New Franklin. Respondent Lynch and also Bergwin and Stegner testified that there were freight cars on several of the switch tracks, east of the crossing, and especially on tracks 1 and 2, immediately south of the main track and over which the northbound automobile had to cross before it came upon the main track. They were positive that the cars on track 1 next to the main track and on the adjoining switch tracks were box cars, that the nearest of them was within five or ten feet of the crossing and that these cars extended continuously back as far as the eye could see in the night. Box cars so located east of the crossing cut off the view of the train coming from the east. Employees of appellant railroad company, working in the yards that night, testified that the cars on track 1 east of the crossing were coal cars; that the nearest of them was at least 250 feet distant from the crossing; that there were no cars on track 2 and that the cars on track 3 were sixty to eighty feet east of the crossing. Cars so located would not interfere with the view of the train to the same degree as if the cars were placed as respondent testified. For the purposes of adjudging the demurrers we must accept the testimony of respondent's witnesses.

Bergwin, driving north on Highway No. 5 about a quarter to one o'clock in the morning of April 29, 1929, stopped for a minute or more when he drew near to the most southerly track No. 7. He then drove to a space about fifty feet wide between tracks 5 and 6 and there he waited several minutes while a switch engine and a freight car passed eastwardly over the crossing on track No. 5. This stop between tracks 5 and 6 was confirmed by members of the switching crew one of whom stepped off the engine and flagged Bergwin as the

switch engine approached the crossing. During the stops Bergwin stated to his companions that it was a dangerous crossing and that he had been injured there in a collision. All three men in the automobile testified that after the switch engine passed they looked and listened; that they did not see nor hear a train coming, and that then Bergwin started his car in low gear and so proceeded at five 'or six miles an hour toward the main track. When the automobile passed beyond the freight cars on track 1 east of the crossing and on to the main track, they saw for the first time a locomotive bearing down upon them from the east about sixty feet distant. Respondent Lynch exclaimed ''Look out.'' Bergwin shifted from low gear to second, stepped on the gas and accelerated the speed of the car very subsubstantially. The locomotive hit the rear of the automobile. Stegner was thrown out backwards and Lynch through the side door. That the locomotive was close to the crossing when the automobile went upon the main track is supported by the testimony of the engineer and fireman that, by reason of structural obstructions of the forward part of the locomotive, they in the cab could not see objects on the track nearer than eighty or ninety feet away, and that they did not see the collision. They did not learn of it until they stopped the train at its destination, Franklin Junction a mile beyond the crossing. Respondent put in evidence an ordinance of the city of New Franklin prohibiting the speed of railroad trains in excess of ten miles per hour within the corporate limits. Respondent testified that the train was moving at the rate of forty to fifty miles per hour, when the occupants of the automobile first saw it. Respondent and Stegner testified that at the trial of another case growing out of the same accident, engineer Gowan testified that, at the time of the collision, the train was traveling at the rate of twenty-five to thirty miles an hour. Counsel for appellants admitted of record during the presentation of respondent's case that the train mentioned in the evidence was traveling at a greater rate of speed than ten miles per hour, when the collision occurred.

Appellants contend that respondent, Lynch, a guest in Bergwin's car, was guilty of contributory negligence as a matter of law. In support of this point they say that ''no man under the circumstances as shown in this case and exercising ordinary care for his own safety, would have failed to have requested the driver to bring the car to a stop before going on to the main line, and that the respondent either saw and disregarded what he saw, or he failed to look and therefore failed to see what could have been seen.'' Of course, it is the negligence of the respondent and not of Bergwin, the driver, which is in question. Respondent Lynch testified that, after Bergwin started the car from the space between tracks 5 and 6 and proceeded in low gear north toward the main track, he, Lynch, looked

and listened and continued to do so and he did not see or hear the approach of the passenger train. Bergwin had opened the left window beside him. Respondent also testified that the lights north of the main track and east of the crossing were upon high poles and had reflectors and they illuminated the crossing so that neither the rays from the headlight of the engine nor from the headlight of the automobile could be distinguished. He also testified, as did Bergwin the driver and Stegner, the other guest, that while the auto was approaching the main track and he was listening, he did not hear the bell of the locomotive ringing nor its whistle blowing. Several witnesses, who were employees of the railroad company and were working in the yards near the crossing, testified on behalf of appellants that they did not hear the bell ringing although all of these witnesses said that they heard the whistle blowing from a point a quarter of a mile distant until the train passed over the crossing. Respondent Lynch further stated that he had known Bergwin for ten years, that Bergwin had been driving an automobile as long as Lynch had known him and that Bergwin was a good and experienced driver.

We are of opinion that the trial court rightly overruled the demurrers. To the contrary, appellants cite cases in which pedestrians in the daytime were killed or injured when they walked in front of nearby trains at points where visibility was not hindered by curves or obstacles (Sullivan v. Gideon & N. I. Railroad Co., 213 Mo. App. 20, 247 S. W. 1010, 308 Mo. 48, 271 S. W. 983), and cases in which drivers of automobiles were the victims of collisions caused by their own act in driving upon tracks when they might have seen from a point of safety an approaching train 1000 feet away (Holtkamp v. Chicago, B. & Q. Railroad Co., 208 Mo. App. 316, 234 S. W. 1054), or 150 feet away (Monroe v. C. & A. Ry. Co., 297 Mo. 633, 249 S. W. 644). But negligence of a guest of the driver of an automobile cannot be predicated upon the law of these cases. Even if we should assume, solely for the purposes of this case, that Bergwin, the driver of the car, was negligent as a matter of law, we could not impute his negligence to respondent unless the relation between Bergwin and respondent Lynch, were such that the acts and omissions of Bergwin were the acts and omissions of Lynch or unless Lynch expressly sanctioned what Bergwin did or failed to do. [Boland v. St. Louis-San Francisco Ry. Co., 284 S. W. 141, citing Stotler v. Railroad, 200 Mo. 107, 98 S. W. 509.] But Bergwin was not the agent or servant of Lynch, who was merely a guest of Bergwin.

There is no evidence of express authorization by Lynch of the course of conduct of Bergwin in driving his car upon the main track. Therefore the acts of Bergwin were not attributable to Lynch as a matter of law. Was Lynch himself negligent? We can best answer

that question in the language of this court in the case of Boland v. Railroad, supra, which was an action by a guest of a driver of an automobile for injuries received in a collision with a train. The driver moved his car on to a two-track railroad crossing behind a westbound train and in front of an eastbound train. In that case this court, Division One, said (284 S. W. 141, l. c. 144) : "Was plaintiff herself negligent? We fully subscribe to the doctrine that the occupant of a vehicle cannot abandon the exercise of his own faculties and intrust his safety absolutely to the driver, regardless of the imminence of danger or the visible lack of ordinary caution on the part of the driver to avoid harm. [Fechley v. Traction Co., 119 Mo. App. 358, 96 S. W. 421.] Yet it is a matter of common knowledge that under ordinary circumstances such occupants do largely rely upon the driver, who has the exclusive control and management of the vehicle, exercising the required degree of care, and for that reason courts are not justified in adopting a hard and fast rule that they are guilty of negligence in doing so. Every case must depend upon its own particular facts." Whether respondent Lynch contributed to his injuries by his own negligence was a question for the jury.

II. Appellants urge that the court erred in excluding the testimony of their witness W. S. Williams based on experiments made at the scene of the accident. The offer of proof disclosed that on a certain clear night, not moonlight (as the night of the accident had been described) about nine months after the accident, appellant railroad company placed box cars on tracks 1 and 2 in New Franklin at the places east of the highway where respondent's witnesses by their testimony located them on the night of the accident. An engine of the same type as the engine mentioned in evidence was placed on the main track 500 feet east of the crossing. Professor Williams was seated in the back seat of a Ford sedan which was stationed at a point between tracks 5 and 6, where respondent and the other occupants of the car testified that on the night of the accident, Bergwin stopped while a switch engine passed. The locomotive used in the experiment moved westwardly toward the crossing and the automobile in which Professor Williams was seated was driven northwardly toward the main track. The offer of proof was that: at all times the glare of the headlight of the locomotive was plainly seen by Professor Williams above the cars, upon the roof of the station and upon the crossing, and that, as the locomotive approached, the light became very bright upon the crossing.

The admission or exclusion of experimental evidence rests largely in the discretion of the trial court. The rule, supported by authorities from many jurisdictions, is thus stated in 2 Jones'

Commentaries on the Law of Evidence (2 Ed.), section 740, page 1376:

"The appellate courts have quite uniformly maintained a very common-sense attitude with regard to the admission or rejection of experimental evidence in the court below. Admission of evidence of experiments, or permitting them to be performed in court, is a matter peculiarly within the discretion of the trial judge. His discretion in this regard should not be interfered with on appeal unless it is manifest that it has been abused. One reason for the rule leaving the admission or rejection of experimental evidence to the discretion of the trial court is that such a court is in a better position than the appellate court to judge of the similarity of conditions. But a much stronger reason is that the trial judge should not be hampered by arbitrary rules which, if drawn in detail as to this class of evidence, would obviously be so technical as to be difficult of application and productive of appeals."

The test of the probative value of experiments is as follows (James v. Bailey Reynolds Chandelier Co., 325 Mo. 1054, 30 S. W. (2d) 118, l. c. 124): "In order that an experiment shall possess sufficient probative value to warrant the admission of evidence thereof, it is necessary that the circumstances under which the experiment was made should have been similar to those prevailing at the time of the occurrence involved in the controversy. But it is not necessary that the conditions should have been exactly identical; it is sufficient if the *causal* conditions and circumstances were substantially reproduced." ■ The offer of proof of the experiment in the instant case does not inform us whether appellants intended to show, as one of the similar circumstances created by Professor Williams and his associates, that the electric lights, magnified by reflectors and placed at the tops of poles east of the crossing and north of and close to the main track, were in the same positions and shining on the night of the test as on the night of the accident. It is a matter of common knowledge that rays of light, coming from different sources, blend into a composite illumination. If some of these sources, namely the globes atop the poles, were visible to the persons whom the experiment was designed to contradict, and if another source, to-wit, the locomotive headlight, was not within the view of the men in the automobile on the night of the accident by reason of the presence of the cars on track 1, it might easily be that the rays from the locomotive would lose their identity and warning power when blended with the field of light cast by the high-placed yard lamps.

■ Another point of departure of Professor Williams' experiment is that, in answer to preliminary questions before the offer of proof, Professor Williams stated that the automobile in which he was seated was located so that "the driver in the front seat could see the headlight of the engine just past the box car." There was no

98

testimony offered by respondent that the automobile in which respondent was seated on the night of the accident was at any time so located. This assignment is ruled against appellants.

III. Appellants complain that the trial court erred in refusing to admit as evidence their Exhibit No. 5, which was a photograph of the railroad yards at New Franklin, taken in June, 1929, about two months after the accident, showing freight cars which had been placed upon tracks 1 and 3 in the positions in which appellants' witnesses had testified other cars were standing on the night of the accident. The trial court admitted without objection photographs offered by appellants and which pictured the track free of cars. We have seen that there were substantial differences between the testimony of witnesses for respondent and for appellants as to the distances of the cars from the east side of the crossing on the night of April 28, 1929. The cars in the photograph, Exhibit 5, were at the distances stated by appellants' witnesses. The court properly sustained respondent's objection to the admission of this exhibit. See Riggs v. Metropolitan Street Railway Co., 216 Mo. 304, 115 S. W. 969, in which this court held that photographs which were admitted at the trial should have been excluded. The reason for the ruling was that the photograph showed a dummy figure of a man beside a track in a position different from that in which a witness for plaintiff had testified that plaintiff was lying when run over.

IV. Appellants charge that the trial court erred in excluding certain testimony of C. W. Evans, fireman of the switch engine which passed east on track 5 over the crossing while Bergwin and his guests waited in the space between tracks 5 and 6. Evans testified that he did not see the collision but he heard the noise of it and went to the scene. When he arrived there he testified he had a conversation with Bergwin, the driver of the car. Objection being made to the conversation the court inquired how long after the accident did the conversation occur, and Evans answered three or four minutes. In response to the court's further question what were the men in the accident doing when he got there, Evans replied that one of the men was lying on the ground and the two others were walking around. It is a fair inference that Bergwin was one of the men who were walking. The court then sustained the objection to the conversation and appellant offered to prove by Evans that Bergwin said to him: "What was that; a train? I didn't see it." To this Evans replied: "My God! man, there was no reason why you could not." This was not admitted in evidence.

Appellants contend that the conversation should have been admitted for the reason that it was part of the *res gestae*. We are

of opinion that the exclamation of Bergwin: "What was that; a train? I didn't see it," was admissible. Wigmore in his treatise on Evidence (2 Ed.) Vol. III, sec. 1735, page 735, introduces his exposition of spontaneous exclamations as part of the *res gestae* and as such an exception to the hearsay rule, with a note of despair. But in view of decisions of this court we find no difficulty in ruling Bergwin's statement to be admissible. In the case of Leahey v. Cass Ave. F. G. Ry. Co., 97 Mo. 165, 10 S. W. 58, a boy fell from a street car, slipped under the wheels and suffered injuries from which he died later. In answer to questions as to where he lived and how he received his injuries, he stated that he got on the front step of the car and the driver kicked him off. He made this statement five or eight minutes after the accident. A doctor came to a house to which the boy had been moved fifteen or twenty minutes later, asked the same question and received the same answer. This court, in ruling that the first statements were admissible as part of the *res gestae* but that the later statements were not, reviewed several cases and the works of text-writers and drew these conclusions (10 S. W. l. c. 60):

"These authorities show that there is still some diversity of opinion, both as to the rule and as to the application of a given rule. Care must be taken not to make the field of *res gestae* too large or too contracted. The better reasoning is that the declaration, to be a part of the *res gestae*, need not be coincident, in point of time, with the main fact to be proved. It is enough that the two are so clearly connected that the declaration can, in the ordinary course of affairs, be said to be the spontaneous explanation of the real cause. The declaration is, then, a verbal act, and may well be said to be a part of the main fact or transaction. Again, if the subsequent declaration and the main fact at issue, taken together, form a continuous transaction, then the declaration is admissible. Much, therefore, depends upon the nature and character of the transaction in question; for it may be, and often is, of a continuing character. It cannot be said that a mere subsequent declaration will of itself furnish a sufficient connecting circumstance. Applying these principles to the present case, it is clear that what the boy said as to how he got under the car, when first picked up, was properly received as evidence of the cause of his injuries. He was then at the scene of the accident, surrounded by persons who witnessed the calamity and his declarations then made were verbal acts, though made after the accident had happened. But what he said after he had been removed to the house of Mr. Keating, after the persons connected with the accident had separated, and in answer to questions as to how he got hurt, should have been excluded. These answers were but narratives of what had transpired, made and intended as such."

The trial court appeared to base its exclusion of the conversation

upon the ground that respondent Lynch did not make the statement and that Bergwin was not his agent. But Bergwin was a leading actor in the tragedy of the crossing and even the exclamations of bystanders and strangers are admissible under proper circumstances. In the case of Nahorski v. St. Louis Electrical Terminal Railway Company (Mo.), 271 S. W. 749, this court held to be admissible the exclamation of a passenger in a street car, uttered immediately before the occurrence of the collision out of which the damage suit grew. This witness was not concerned in the litigation. She was but a bystander. But the court ruled that her exclamation was part of the *res gestae* and cited several Missouri cases in support of this view. However, the response of Evans to the exclamation of Bergwin was not part of the *res gestae*. It was a hearsay, self-serving statement of a man who did not see or participate in the accident. Therefore it was incompetent. Appellants offered to prove not alone Bergwin's exclamation but the conversation between him and Evans. When an offer of evidence is mixed up with matters clearly incompetent the trial court is not required to sort out the competent from the incompetent, but it can reject the whole offer. [Teats v. Flanders, 118 Mo. 660, 24 S. W. 126; Williams v. Chicago, Burlington & Quincy Ry. Co., 169 Mo. App. 468, 155 S. W. 64; Hart v. Brown (Mo. App.), 216 S. W. 552.] Since the action of the trial court in sustaining the objection to the offer of proof may be sustained upon this last-stated ground the assignment of error is ruled against appellants.

V. The assignment of error meriting the most serious study is directed at plaintiff's (respondent's) Instruction No. 1. Appellants charge that the instruction is prejudicially defective because it predicated a right of recovery upon failure to ring the bell alone, ignoring the warning of the whistle. Respondent in his ·petition charged various acts of negligence in separate paragraphs, the third of which is as follows: "(c) that defendants failed and neglected to ring the bell on said locomotive engine eighty rods from said crossing, and to keep it ringing until said engine crossed said highway, and failed and neglected to sound the whistle eighty rods from said crossing and to sound the whistle at intervals until said engine crossed said highway." The negligence stated in the last paragraph is predicated on Section 4756, Missouri Statute Annotated, 1929, the pertinent parts of which are as follows:

"A bell shall be placed on each locomotive engine, and be rung at a distance of at least eighty rods from the place where the railroad shall cross any traveled public road or street, and be kept ringing until it shall have crossed such road or street, or a· steam whistle shall be attached to such engine and be sounded at least

eighty rods from the place where the railroad shall cross any such road or street, except in cities, and be sounded at intervals until it shall have crossed such road or street, under a penalty, . . . and said corporation shall also be liable for all damages which any person may hereafter sustain at such crossing when such bell shall not be rung or such whistle sounded as required by this section: *Provided, however*, that nothing herein contained shall preclude the corporation sued from showing that the failure to ring such bell or sound such whistle was not the cause of such injury.''

Respondent and his companions in the automobile testified that they did not hear the bell or the whistle. Witnesses for appellants testified that they heard the bell and the whistle. Plaintiff's Instruction No. 1 informed the jury that ''under the law of this State it became and was the duty of defendants at the time in question to ring the bell on the locomotive engine attached to the train of cars mentioned in evidence eighty rods (1320 feet) east of said crossing and to keep on ringing said bell until said engine had crossed over said crossing, and if you find from the evidence that defendants failed to so ring said bell at the time in question then they were guilty of negligence.'' The instruction further advised the jury that if they found that as a direct result of the failure to ring the bell plaintiff was injured while he was exercising ordinary care for his own safety they should return a verdict for plaintiff.

Appellants cite Moyer v. Chicago & A. Railroad Co. (Mo. Sup. en Banc), 198 S. W. 839, Daniel v. Pryor (Mo. Sup.), 227 S. W. 102, and Mundy v. St. Louis-San Francisco Railroad Co. (Mo. App.), 45 S. W. (2d) 941, in support of their proposition that, in view of the pleadings and the evidence, it was prejudicial error to omit from respondent's Instruction No. 1 the element of failure to sound the whistle. We are of opinion that this assignment of error should be sustained. Plaintiff in the case of Moyer v. Chicago & A. Railroad Co., supra, recovered damages for injuries suffered by reason of the fact that his team, approaching very near to a crossing, and frightened by a train, ran away and upset the wagon in which plaintiff was riding. Plaintiff in his petition charged that defendant failed to construct a rising approach to the track of the width prescribed by statute, and that as plaintiff was driving up the approach one of defendant's trains, without sounding the whistle, ringing the bell or giving any other notice or warning of its approach suddenly passed over said crossing in front of plaintiff's team, then only a short distance from the track. An instruction given on behalf of the plaintiff stated the acts of negligence with which defendant was charged and required the jury as a condition precedent to a verdict in plaintiff's favor to find that defendant was guilty of the same. Of this instruction the Court en Banc said: ''The instruction, having

been drawn in conformity with the averments of the petition, was not erroneous.'' [198 S. W. 1. c. 842.] The accident happened within the limits of the city of Glasgow. The judgment of the trial court in favor of plaintiff was affirmed. Upon a rehearing the court en banc examined the objection of the defendant railroad company that the instruction imposed upon it too great a burden in requiring the whistle to be sounded because the accident happened in a city where the statute provides that only the bell should be rung. Of this contention the court said [198 S. W. 1. c. 844]: ''The objection urged to instruction numbered 1 is that it imposes an unauthorized burden upon the defendant. A discriminating analysis of its terms will show that this contention is not well founded. Conjoined with the duty imposed upon defendant to construct and maintain a crossing twenty-four feet in width was that of ringing the bell or sounding the whistle upon the approach of one of defendant's trains to said crossing. The statute (Sec. 3140, R. S. 1909) only requires that the bell be sounded. The alternative requirement of sounding the whistle at a crossing within the limits of a city is the matter complained of. The only effect of this requirement was to add to plaintiff's burden of, proving negligence. A signal required of a railroad train approaching a crossing is for the purpose of warning. The limiting of the signal at crossings in cities is not to lessen the warning, but because the ringing of the bell is considered sufficient; and the sounding of the whistle, required elsewhere, is eliminated, not because it will not constitute a warning, but on account of the annoyance it may give to those living near at hand. [Coffin v. Railroad, 22 Mo. App. 1. c. 604.] While it sufficiently conforms to the requirement of the statute in actions charging negligence at a railroad crossing in a city, resulting in an injury from a failure to give warning of the approach of a train, to limit the allegation of negligence to failure to ring the bell, if the plaintiff goes further, as in this case, and alternatively pleads as a ground of negligence a failure to sound the whistle, he will be required to prove the same. The defendant, however, is only required to show a compliance with either of these requirements to free himself from negligence so far as concerns the giving of the signals.'' In the instant case, respondent having gone further than the statute and pleaded as a ground of negligence the failure to sound the whistle as well as failure to ring the bell and having produced evidence tending to prove failure of appellants to give warning either by bell or by whistle, it became the duty of the court to give an instruction in accordance with the averments of the. petition and the evidence adduced. Appellant's witnesses were unanimous that the whistle had been blown intermittently beginning at a point one-quarter of a mile from the crossing and that the whistle was sounded continuously from a point 500

feet east of the crossing until the locomotive passed over the crossing. Not all of appellants' witnesses heard the bell. In these circumstances and under the averments of the petition it was prejudicial to omit from the instruction under examination the element of failure to sound the whistle.

In the case of Daniel v. Pryor et al. (Mo.), 227 S. W. 102, arising out of a crossing accident in the city of St. Louis, Division Two of the Supreme Court held, upon the authority of Moyer v. Railroad, supra, that an instruction was prejudicially erroneous in authorizing a recovery by plaintiff if the bell was not rung, the petition having charged that defendants, as receivers of a railroad, were guilty of negligence in failing to ring the bell and to sound the whistle of the locomotive at the time and place of the accident. In the case of Mundy v. St. Louis-San Francisco Ry. Co., 45 S. W. (2d) 941, l. c. 944, involving a crossing accident in the city of Marshfield, Missouri, the Springfield Court of Appeals ruled that the trial court committed reversible error in giving an instruction which had the same shortcoming under the pleadings and proof as in the Daniels case, supra. The Springfield Court of Appeals based its ruling in the Mundy case upon the decisions of this court in the Moyer and Daniel cases.

Respondent, with much industry and power of persuasion, seeks to distinguish the instant case from the above-cited cases. But we fail to see any distinction that takes from the two prior decisions of this court (one of them of the Court en Banc) their authoritative character here. Respondent cites and quotes many cases by which he would convince us that the instruction here is not erroneous. But we cannot be persuaded either because the cases are not in point or they are not of the authority of an opinion of the Supreme Court en Banc. We will note but one of these cases. Respondent urges that the case of Lamb v. Missouri Pacific Ry. Co., 147 Mo. 171, 48 S. W. 659, decided by the court en banc, and growing out of a crossing accident in the city of Pleasant Hill, Missouri, is in direct conflict with Moyer v. Railroad, supra. We find no such conflict. Let us add that the Lamb case differs from the instant case and from the Moyer, Daniel and Mundy cases, upon a question of fact, important here, that there was no evidence that the locomotive whistle had been sounded. The Supreme Court en Banc in its statement of facts in the Lamb case said (147 Mo. 171, 48 S. W. l. c. 661] : "As to whether the bell on the engine to which the tender was attached was being rung at the time of the accident, the evidence was conflicting, but no other signals were given." Omission to give any signal or warning by bell or whistle before reaching the crossing had been pleaded. The opinion shows that the defendant railroad did not attempt to prove that the whistle had been sounded.

104

■ VI. Appellants, Gowen and Bryan, the engineer and fireman of the locomotive, assail respondent's Instruction 1 upon the ground that it authorizes a verdict against them if the jury should find that they failed to ring the bell. They argue that this charge is nonfeasance for which the railroad company is liable but they are not liable to third persons. In support of this proposition, they cite McGinnis v. Chicago, Rock Island and Pacific Ry. Co. et al., 200 Mo. 347, 98 S. W. 590, l. c. 592, 9 L. R. A. (N. S.) 880, 118 Am. St. Rep. 661, 9 Am. Cas. 656, and Hamm v. Chicago, B. & Q. Ry. Co. et al., 211 Mo. App. 460, 245 S. W. 1109, which latter case also cites Harriman v. Stowe, 57 Mo. 93, where this court reasoned the proposition as it did in the McGinnis case, supra. But in our opinion the instruction is bad as to the engineer and fireman for a more obvious reason than for nonfeasance, and we state that other reason thus: The statute (4756) provides a penalty of $20 for every neglect of the provisions of the section requiring the bell to be rung or the whistle to be sounded upon the approach of a train to a crossing of any traveled public road or street, the penalty to be paid by the corporation owning the railroad in an action by the prosecuting or circuit attorney. We did not deem fit to quote the penalty provision in the parts of the statute set out in the preceding paragraph of this opinion. But we have seen that the mentioned section further states after the penalty clause: "And said corporation shall also be liable for all damages which any person may hereafter sustain at such crossing when such bell shall not be rung or whistle sounded as required by this section." Respondent in his petition imputes negligence not only to the defendant railroad company but to the personal defendants, the engineer and fireman, for violation of the duty, imposed by Section 4756, to ring the bell or sound the whistle. The statute restricts such liability to the railroad corporation alone. Therefore the instruction is faulty in subjecting the two personal defendants to statutory liability for failure to ring the bell. With respect to its penal provisions the statute is to be strictly construed. [State to use, etc., v. Chicago, Rock Island and Pacific Ry. Co., 19 Mo. App. 104.] But so far as it is to be considered as compensatory for an injury done, it is to be construed as any other statute. [Parish v. M. K. & T. Ry. Co., 63 Mo. 284.] Under familiar rules of statutory construction and under the averments of the petition the personal defendants are not liable to respondent for failure to ring the bell.

■ VII. Appellants assign as error the refusal of the trial court to give their Instruction D-18 which is as follows: "The court instructs the jury that the defendant railroad company and its operators were not required by law to both ring the bell and blow

the whistle for a road crossing, but that the doing of either as set forth in other instructions, complies with the law."

The refusal of the court to give the foregoing instruction emphasizes and even aggravates the prejudicial error of respondent's Instruction 1 which, as we have seen, predicated a right of recovery upon failure to ring the bell alone. Instruction D-18, if it had been given, would have abated the prejudice of respondent's Instruction 1. We have quoted Moyer v. Railroad, supra, to the effect that a railroad company is only obliged to show a compliance with either of the requirements of ringing the bell or sounding a whistle to free itself from negligence so far as concerns the giving of signals. Instruction D-18, under the pleadings and the evidence and in view of respondent's Instruction 1, should have been given.

VIII. For the prejudicial errors stated in paragraphs V, VI and VII, the judgment is reversed and the cause remanded. *Cooley* and *Westhues, CC.*, concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. *Leedy, J.*, not sitting; *Tipton, J.*, and *Ellison, P. J.*, concur.

